(C.D. 2440)

NORTON & ELLIS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 6, 1964)

*Sharretts, Paley & Carter* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Mollie Strum* and *Samuel D. Spector*, trial attorneys), for the defendant.

Before OLIVER and WILSON, Judges

WILSON, Judge: The merchandise involved in the case at bar, with the exception of that covered by protest 59/12489 herein, is described on the invoices covered thereby as Polycolle PK–1. It was assessed with duty at the rate of 3½ cents per pound and 25 per centum ad valorem under paragraph 27(a)(4)(5) of the Tariff Act of 1930, as

modified, as a mixture consisting in part of a product provided for in said paragraph 27, it appearing that said product contained 5 percent of a coal-tar plasticizer (plaintiff's exhibit 1, R. 11).

The merchandise covered by protest 59/12489 is described as Terokal adhesive. It was classified under paragraph 24 of the Tariff Act of 1930 at the rate of 20 cents per pound and 25 per centum ad valorem as an alcoholic compound, not specially provided for, by reason of the fact that the merchandise contained 9 percent of methyl alcohol (plaintiff's exhibit 2, R. 12). Both products here in question are used as adhesive materials employed in the making of wooden flooring.

Plaintiff herein, the customs broker for the importer, claims in all of these protests that both products should have been classified under paragraph 205(d) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, under the provisions therein for "other cement, not specially provided for." Alternatively, with respect to the Terokal adhesive covered by protest 59/12489, plaintiff claims this merchandise properly dutiable under paragraph 5 of the relevant tariff act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, at the rate of 11 per centum ad valorem, as a chemical mixture or compound.

The provisions of the statutes under consideration are as follows (text as originally enacted under the Tariff Act of 1930; rates of duty at time of import) :

PAR. 27.  Coal-tar products :

*      *      *      *      *      *      *

(a)(4) all mixtures, including solutions, consisting in whole or in part of any of the foregoing products provided for in this paragraph, except sheep dip and medicinal soaps;

(5) all the foregoing products provided for in this paragraph, * * * and not specially provided for in paragraph 28 or 1651, 25 per centum ad valorem and 3½ cents per pound.

PAR. 24. Chemical elements, and chemical and medicinal compounds, preparations, mixtures, and salts, * * * all the foregoing and their combinations when containing alcohol, * * * and all alcoholic compounds not specially provided for, if containing 20 per centum of alcohol or less, 20 cents per pound and 25 per centum ad valorem ; * * *.

[PAR. 205.] (d) Other cement, not specially provided for, 5 per centum ad valorem.

PAR. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 11 per centum ad valorem.

In addition to certain customs laboratory reports (plaintiff's exhibits 1 and 2), there was received in evidence a photograph depicting a wooden floor composed of small wooden squares being laid, with the

aid of the imported material, directly upon a concrete floor (plaintiff's illustrative exhibit 3).

The only testimony in this case was that of plaintiff's witness, Mr. W. W. Miller, executive vice president and treasurer of Miller Brothers Co., Johnson City, Tenn., manufacturer of hardwood oak and maple flooring, and for whose account the merchandise was imported. Mr. Miller testified that, in 1955, his company became interested in a new type of flooring, consisting of wood flooring blocks or slats, composed of very thin ($\frac{5}{16}$ of an inch thick) pieces of oak flooring, $4\frac{1}{2}$ inches long by $\frac{3}{4}$ of an inch to $1\frac{1}{16}$ inches wide, which could be installed on concrete slabs or floors. The products at bar were found suitable as adhesives for use with wood flooring over concrete and were, accordingly, imported for such purpose.

The testimony of plaintiff's witness relative to the method of laying the hardwood wooden blocks, with the use of the imported material, may be summarized as follows: The wooden blocks in question were composed of small slatlike pieces and were formed in a "jig," 18 inches square, and then, while still in the jig, were covered with paper which was glued to the top of the block to hold it together (R. 24–25). The block was then fastened to the floor by use of the imported adhesive material, the paper on the top surface of the wooden block being removed. Nothing was added to the imported Polycolle or Terokal cement which, as imported, was ready for use by spreading on the concrete floor with a trowel (R. 26). The witness stated that no fastening device, other than the cement or mastic in question, was used to hold the wood to the concrete. There was no other use for either material, except that heretofore indicated (R. 28). Under cross-examination, plaintiff's witness stated that both products were used for the same purpose in connection with laying tile floors.

The record discloses that the "Terokal" adhesive (which was classified under paragraph 24 of the Tariff Act of 1930 at the rate of 20 cents per pound and 25 per centum ad valorem as an alcoholic compound) contained methyl alcohol. In the case of *United States* v. *Sandoz Chemical Works, Inc.*, 46 CCPA 115, C.A.D. 711, our appellate court, page 119, held that the term "alcohol" in paragraph 24 of the Tariff Act of 1930 was limited to ethyl alcohol, in accordance with the common meaning of the word. Accordingly, the product covered by protest 59/12489, containing as it does methyl alcohol, was improperly classified under the provisions of paragraph 24, *supra*.

The testimony in the case at bar clearly shows, in our opinion, that the imported Terokal adhesive is, in fact, a "cement"; that its only use is to fasten the wooden blocks to the concrete floor upon which it is laid; and that the flooring was held in place solely by the use of the imported material, no other method of fastening the blocks to the con-

crete slab or floor being used. Webster's New International Dictionary, second edition, page 433, defines "cement" as—

cement, *n.* * * * 2. Any substance used by men or animals for making bodies adhere to each other, as asphalt, glue, gypsum, lime, paste, plaster of Paris, Portland cement, tar, etc.

In our opinion, the Terokal product is a "cement" within the common acceptation of the term, and, as such, it is more specifically provided for under paragraph 205 (d) of the tariff act, as modified, as claimed.

The record in this case shows that the "Polycolle PK–1" is within the provisions of the aforesaid paragraph 27 (a) (4) (5) of the act, being a mixture consisting in part of a coal-tar plasticizer. However, the testimony in the case indicates that it is also a cement and, in our opinion, it is also classifiable under paragraph 205 (d) of the tariff act, as modified, under the provision therein for "other cement."

In support of the collector's classification of the "Polycolle PK–1," the Government, in its brief, directs our attention to the holding of our appellate court in the case of *Kuttroff, Pickhardt & Co., Inc.* v. *United States*, 21 CCPA 332, T.D. 46864. There, certain automobile body paints, a component part of which was synthetic resin, were held properly dutiable as mixtures, consisting in whole or in part of resin-like products prepared from phenol, under paragraph 28 of the Tariff Act of 1922, rather than as "paints" under paragraph 68 of the same act. In so holding, the court, page 339, concluded that Congress intended to include within paragraphs 27 and 28 of the relevant tariff act "most, if not all, coal-tar products, except those which were provided for elsewhere in the act" and stated as follows:

* * * To accomplish this purpose it named definitely a great number of articles and materials, and then, by several general, comprehensive catch-all provisions, further greatly broadened and enlarged the scope of the paragraphs. The resin component of the paint at bar is a coal-tar product made from phenol, and no reason has been suggested why it should have been the policy of the Congress to have excluded the mixture at bar from paragraph 28. * * *

We are, of course, in accord with the holding of our appellate court in the *Kuttroff, Pickhardt* case, *supra*. However, we do not understand from the opinion expressed therein that all coal-tar products are classifiable and dutiable under paragraph 27 or 28 of the tariff act merely by virtue of the fact that they are coal-tar products or that they are mixtures, consisting in whole or in part of any of the articles or materials provided for in said paragraph 27 or 28. Especially is this so, in our opinion, when the rule of relative specificity is called into question, as in the case at bar. A review of certain holdings of this and our appellate court, as expressed below, will, in our opinion, support the latter conclusion.

In *United States* v. *Alex. Murphy & Co.*, 16 Ct. Cust. Appls. 461, T.D. 43210, merchandise, known as Yavan glue, was classified under

paragraph 24 of the Tariff Act of 1922 for certain articles "when containing alcohol" or "all alcoholic compounds not specially provided for," and claimed dutiable under paragraph 28 of said act for "all mixtures, including solutions, consisting in whole or in part of any of the articles or materials provided for in this paragraph." Our appellate court, in the *Murphy* case, held the merchandise there involved classifiable for duty purposes under paragraph 28 of the relevant act, as claimed, holding that if the glue was composed in some substantial part of any of the materials provided for in said paragraph 28, it was sufficient to bring it within the paragraph under which it was claimed dutiable. Of primary importance, in our opinion, in the determination of the issues before us, was the consideration given by our appellate court, in the *Alex. Murphy* case, to the provision of paragraph 28 of the Tariff Act of 1922, which read as follows:

*Provided further,* That any article or product which is within the terms of paragraph 1, 5, 38, 40, 61, 68, 84, or 1585, as well as within the terms of paragraph 27, 28, or 1549, shall be assessed for duty or exempted from duty as the case may be, under paragraph 27, 28, or 1549.

With reference to the aforesaid provision, the court, in the *Murphy* case, pages 464–465, stated:

The Government contends that because paragraph 24 is not included among the paragraphs specifically mentioned in the above-quoted proviso of paragraph 28 it should be held that Congress did not intend that merchandise otherwise within paragraph 24 should be, nevertheless, classifiable under paragraph 28. We are unable to agree with this contention. The obvious purpose of inserting in the proviso the various paragraphs mentioned was to accomplish just what the proviso declares, namely, that in cases where the merchandise is within the mentioned paragraphs, as well as within paragraph 27, 28, or 1549, the provisions of the three last-mentioned paragraphs shall govern, but *as to any other paragraph not named the terms of which may include merchandise also within said three paragraphs the more specific provision shall control.*

We agree with the Customs Court that the testimony clearly establishes that the importation is a mixture composed *in part* [italics by appellate court] of the materials provided for in paragraph 28, in that it contains a resinlike product prepared from phenol or cresol, both of which are coal-tar products named therein, and we hold, as did the court below, that the provision for "synthetic phenolic resin and all resinlike products prepared from phenol * * * all of these products whether in a solid, semisolid, or liquid condition," in paragraph 28, *more specifically* describes the merchandise here than the provision for certain articles "when containing alcohol" or "all alcoholic compounds not specially provided for," in paragraph 24. In this case we understand the Government relies on the last-quoted provision in paragraph 24.

Further than this provision in paragraph 28 for "all mixtures, including solutions, consisting in whole or in part of any of the articles or materials provided for in this paragraph," with certain exceptions which do not include the merchandise here, also more specifically describes this glue than does any provision of paragraph 24. * * * [Italics ours.]

Paragraph 28(i) of the Tariff Act of 1930, here under consideration, also contains a provision similar to that in paragraph 28 of the Tariff Act of 1922, *supra*. Accordingly, it would appear that the specificity of the product involved in the case at bar might be called into question.

In *Ultra Ray Pearl Essence Corp., c/o U.S. Plastics et al.* v. *United States*, 46 Cust. Ct. 228, C.D. 2260, certain pigment (pearl essence) was held classifiable under paragraph 27(a) (4) (5) of the Tariff Act of 1930, as modified, under the provision therein for "All mixtures, including solutions, consisting in whole or in part of any of the products provided for in subdivision (1), (2), or (3) of paragraph 27(a), Tariff Act of 1930," rather than under paragraph 66 of the tariff act, as modified, as "Pearl essence." The defendant, in that case, conceded that, but for the language of paragraph 28(i) of the Tariff Act of 1930, the merchandise therein involved would be properly classifiable under paragraph 66 for "Pearl essence." It, therefore, appears that, although the merchandise in the *Ultra Ray Pearl Essence* case, *supra*, was also included within the provisions of paragraph 27(a) (4) (5), it would, but for the limiting provision in paragraph 28(i), *supra*, have been more properly classifiable under paragraph 66 of the act, thus involving the application of the rule of relative specificity. In the case at bar, paragraph 205(d) of the Tariff Act of 1930 for "other cement" is not enumerated in paragraph 28(i) of the act. We are, accordingly, privileged to invoke the rule of relative specificity.

In *Bluefries New York, Inc.* v. *United States*, 39 Cust. Ct. 79, C.D. 1909, certain merchandise, described as "a synthetic product in liquid form which, when sprayed onto the surface of some material, hardens into a surface coating" was held more specifically provided for under the *eo nomine* provision, contained in paragraph 75 of the Tariff Act of 1930, for "all other varnishes * * * not specially provided for," than under the provision in paragraph 28(a) of the act for "all mixtures, including solutions, consisting in whole or in part of any of the articles or materials provided for in this paragraph." The court, in the *Bluefries* case, *supra*, page 81, stated:

* * * Accordingly, as indicated by the parties herein, and in view of the rule enunciated in the *Murphy* case, *supra*, the question here for determination concerns the relative specificity of paragraphs 75 and 28(a) of the act as applied to the imported merchandise.

and, at page 83, the court, in the *Bluefries* case, stated:

* * * In the case at bar, the provision in paragraph 28(a) of the Tariff Act of 1930 for "all mixtures, including solutions, consisting in whole or in part of any of the articles or materials" provided for in said paragraph is one of general or class description and cannot take precedence over the *eo nomine* provision for "varnishes" contained in paragraph 75 of the act, even though the latter paragraph contains a "not specially provided for" clause. The para-

graphs under consideration are not equally applicable to the involved merchandise, and the importation at bar is more specifically provided for under the provisions of paragraph 75 of the act.

The provisions in paragraph 27(a) (4) (5) of the Tariff Act of 1930 for "all mixtures, including solutions, consisting in whole or in part of any of the foregoing products provided for in this paragraph," under which the "Polycolle PK–1" here in question was classified, is also one of general description and cannot take precedence over the provision in paragraph 205(d) of the Tariff Act of 1930 for "other cement, not specially provided for," a *use* provision. In this determination, it seems proper to note the comment of the court, in the *Bluefries* case, *supra*, page 84, relative to the presence of a "not specially provided for" clause in a tariff paragraph, where the court stated:

> The situation in the case at bar, with respect to the presence of the "not specially provided for" clause in paragraph 75, is analogous to that which obtained in the *Draeger Shipping Co.* case, *supra* [*United States* v. *Draeger Shipping Co.*, 13 Ct. Cust. Appls. 265, T.D. 41204]. Here, it may be observed that paragraph 75 provides for certain specially described varnishes, namely, "spirit varnishes containing less than 5 per centum of methyl alcohol" and "spirit varnishes containing 5 per centum or more of methyl alcohol" and then additionally provides for "all other varnishes * * * not specially provided for." It seems clear that the phrase "not specially provided for" in the latter provision refers to and is intended to include varnishes which are not "spirit varnishes" provided for in the other portions of the paragraph.

In the case at bar, paragraph 205, *supra*, provides for a number of different kinds of cement and in subdivision (d) thereof additionally provides for "other cement, not specially provided for."

In *Sandoz Chemical Works, Inc.* v. *United States*, 43 CCPA 152, C.A.D. 623, the importation consisted of a material, known by the name of homatropine hydrobromide, used by ophthalmologists as a mydriatic, and also used in the treatment of peripheral vascular spasms. The merchandise was classified under paragraph 28(a) of the Tariff Act of 1930 as a coal-tar medicinal and was claimed by the plaintiff therein to be more specifically provided for under paragraph 45 of the said act as "Bromine and all bromine compounds not specially provided for." In holding the involved merchandise properly dutiable, as classified, the court, in the *Sandoz Chemical* case, pages 158–159, stated:

> We now come to appellant's second contention, namely that the rule of relative specificity controls classification and that paragraph 45, *supra*, should prevail over paragraph 28, *supra*. * * * In determining relative specificity, it is well settled that a designation by a specific use prevails over a designation of general character without special limitation as to use or other qualification. *Drakenfeld & Co.* v. *United States*, 9 Ct. Cust. Appls. 124, T.D. 37979, and cases cited therein.

In the present case, it can readily be seen that paragraph 28(a), *supra*, relates to use whereas paragraph 45, *supra*, relates to general character. Therefore, in view of the above-cited law, we are of the opinion that the imported homatropine hydrobromide was properly classified under paragraph 28(a), *supra*. * * *

In the *Sandoz* case, *supra*, our appellate court pointed out that a designation by specific use prevails over a designation of general character without special limitation as to use or other qualification.

For all of the reasons heretofore stated, we hold the merchandise involved in protest 59/12489 described as Terokal adhesive and the merchandise described as "Polycolle PK-1" in all of the protests herein involved properly dutiable under paragraph 205(d) of the Tariff Act of 1930 under the provision therein for "other cement, not specially provided for," as claimed. The protests are sustained.

Judgment will be rendered accordingly.