**NAFTONE, INC.**

v.

**UNITED STATES.**

**C. D. 4578.**

United States Customs Court.
Jan. 16, 1975.

Sharretts, Paley, Carter & Blauvelt, New York City (Eugene F. Blauvelt and Gail T. Cumins, New York City, of counsel), for plaintiff.

Carla A. Hills, Asst. Atty. Gen. (Herbert P. Larsen, New York City, trial atty.), for defendant.

WATSON, Judge:

The merchandise at issue in this case is a substance with the trade name Desmocoll 400. The merchandise was classified as "plastics materials" under item 405.25 of the TSUS, as modified by Presidential Proclamation 3822, and was assessed with duty at the rate of 2.5¢ per pound plus 16% ad valorem. Plaintiff claims the merchandise is more specifically provided for as cement, not specially provided for, under item 494.60 of the TSUS, as modified, *supra*, dutiable at the rate of 4% ad valorem.

There is no real factual dispute in this case. The merchandise is a hydroxylated polyurethane formed principally by the reaction of toluene diisocyanate

and a polyadipate. It was created for the purpose of bonding polyvinyl chloride to itself and to other materials such as rubber or leather and finds its chief applications in the shoe industry. It is imported as a solid, in fragments which can be called chips or flakes. In use Desmocoll 400 is ordinarily applied to the substances being bonded after it has been dissolved in solvent such as methyl ethyl ketone, ethyl acetate or acetone. In specific applications other substances are occasionally added. For example, chlorinated rubber is added to promote adhesion when a rubber-type substrate is being bonded to polyvinyl chloride. Generally the bonding is accomplished under the application of heat. Although as a practical matter Desmocoll 400 is not used as an adhesive in its imported condition, it is definitely capable of such use and is the substance which produces the adhesive effect desired by the users.

The real issue in this case can best be phrased as whether the imported substance which, in its origin and composition appears to be a plastics material, is a cement or merely an ingredient used in the making of a cement.

The evidence in this case establishes overwhelmingly that the imported substance is indeed a cement within the common meaning of that term. I find that what is done to the importation in the process of preparing it for application is merely the readying of the cementing substance for use and not the creation of a hitherto nonexistent cement. A substance which is specifically designed for the cementing of materials to each other and which, in its imported condition can accomplish this purpose, is a cement within the meaning of that term. Even if this substance is a plastics material, in the sense that the cement it forms is a "plastic" cement, it is more specifically provided for as a cement.

Headnote 1 to part 13 of schedule 4 of the TSUS (the part in which the provision for cements of item 494.60 appears) makes it plain that a product described in item 494.60 as well as in part 1 of schedule 4 (the part which covers "plastics materials" of benzenoid origin) remains classifiable in item 494.60. This is a noteworthy exception to the general rule contained in said headnote 1 that a "benzenoid" part 1 classification prevails over a competing "nonbenzenoid" classification. Accordingly, a cement which is also a "plastics material" is properly classifiable as a cement.

I continue to adhere to the definition of cement originally relied on in the case of Norton & Ellis, Inc. v. United States, 52 Cust.Ct. 76, C.D. 2440 (1964), and followed in Alloys Unlimited, Inc. v. United States, 67 Cust.Ct. 63, C.D. 4253 (1971), which defines cement, in essence, as any substance used by men or animals for making bodies adhere to each other. The importation is definitely such a substance. The fact that it is used ordinarily in solution and under the application of heat does not detract from its being a cement in its imported condition. I can find no support for the proposition that in order to be a cement a substance must be imported in the form in which it is usually applied. As far as I can see, the importation is simply a cement in a solid concentrated form and entitled to classification as such.

Defendant's extended and scholarly attempt to expand the scope of the provision for plastics materials at the expense of the provision for cements is to no avail particularly in light of the aforementioned headnote. The superior specificity of the provision for cement is clear, the meaning of the term is unambiguous and there is no reason to resort to legislative history and no justification for a definition of cement more restricted than the one to which I adhere.

For the reasons set out above, I find that the importation is properly classifiable as a cement, not specially provided for, under item 494.60 of the TSUS, as modified, and dutiable at the rate of 4% ad valorem.

Judgment will enter accordingly.