The UNITED STATES, Appellant,

v.

NAFTONE, INC., Appellee.

Customs Appeal No. 75–21.

United States Court of Customs
and Patent Appeals.

Jan. 29, 1976.

Rex E. Lee, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Herbert P. Larsen, New York City, for appellant.

Sharretts, Paley, Carter & Blauvelt, New York City, attys. of record, for appellee; Gail T. Cumins, New York City, of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This is an appeal from the judgment of the Customs Court, 390 F.Supp. 535, 74 Cust.Ct. 1, C.D. 4578 (1975), holding that certain imported hydroxylated polyurethane flakes with the trade name Desmocoll 400 are classifiable as "cements, not specially provided for" under item 494.60 as modified by Presidential Proclamation 3822. We affirm.

### The Importation

The merchandise is hydroxylated polyurethane which is a reaction product of toluene diisocyanate and a polyadipate. The hydroxylated polyurethane has been cut into flakes, lightly dusted with talc and imported for the purpose of bonding polyvinyl chloride both to itself and to other materials commonly used in the shoe industry, such as rubber and leather. In use, the flakes are dissolved in a solvent such as methyl ethyl ketone, ethyl acetate or acetone, and, in most commercial applications, other substances may be added to adapt the product to the specific substrates to be bonded. For example, chlorinated rubber is added to promote adhesion to rubber-type substrates. Heat may be applied to complete the bonding process, although adhesion may result even without the application of heat. The testimony shows that Desmocoll 400 has not been used as an adhesive in its imported condition, but, theoretically, that it could be.

### Statutes

Schedule 4—Chemicals and Related Products

Part 1.—Benzenoid Chemicals and Products

\* \* \* \* \* \*

Part 1 headnotes:

1. Except as specifically set forth in the headnotes to other parts of this schedule, all products described in this part shall be classified hereunder even if more specifically described elsewhere in this schedule. Any product described in both subparts B and C of this part shall be classified in subpart C.

\* \* \* \* \* \*

Subpart C headnotes:

\* \* \* \* \* \*

3. The term "plastics materials" In item 405.25 embraces products formed by

the condensation, polymerization, or copolymerization of organic chemicals and to which plasticizers, fillers, colors or extenders may have been added. The term includes, but is not limited to, phenolic and other tar-acid resins, styrene resins, alkyd and polyester resins based on phthalic anhydride, coumarone-indene resins, urethane, epoxy, toluene sulfonamide, maleic, fumaric, aniline, and polyamide resins, and other synthetic resins. The plastic materials may be in solid, semi-solid, or liquid condition, such as flakes, powders, pellets, granules, solutions, emulsions, and other basic forms not further processed.

\* \* \* \* \* \*

Products obtained, derived, or manufactured in whole or in part from any product provided for in subpart A or B of this part.

\* \* \* \* \* \*

Item
405.25  Plastics materials  . . . . .  2.5¢ per lb. +
16% ad val.

\* \* \* \* \* \*

Part 13.—Fatty  Substances,  Camphor,  Chars and Carbons, Isotopes, Waxes, and Other Products.

*Part 13 headnote:*

1. Any product described in this part and also in part 1 of this schedule is classifiable under the said part 1, except any product provided for in item 493.10, 493.75, 494.50, 494.52, or 494.60, and except any product provided for in subpart C of this part.

\* \* \* \* \* \*

Subpart B.—Camphor, Chars and Carbons, Isotopes, Waxes, and Other Products.

\* \* \* \* \* \*

Item
494.60  Cements, not specially
provided for  . . . . . . . . . . .  4% ad val.

### Proceedings Below

Using the definition of cement relied upon in *Norton & Ellis, Inc. v. United States,* 52 Cust.Ct. 76, C.D. 2440 (1964) and followed in *Alloys Unlimited, Inc. v. United States,* 67 Cust.Ct. 63, C.D. 4253 (1971), which defines cement, in essence, as "[a]ny substance used by men or animals for making bodies adhere to each other," the court found that the import was a cement. Noting that the import was a benzenoid plastic and a cement, the court found headnote 1 to part 13 of schedule 4 of the TSUS, *supra,* to be controlling. Hence, it said the import is properly classified as a "cement" under

item 494.60 rather than as a "plastic material" under item 405.25.

Furthermore, the court rejected the government's contention that Desmocoll 400 is merely a component used in making cement, finding, rather, that it is simply a cement in a solid concentrated form and thus entitled to classification as such.

### OPINION

There is no question that the import is a benzenoid plastic and that, if the import is both a benzenoid plastic and a cement within the definition of item 494.60, TSUS, then it is properly classified as a cement. The sole question to be determined here is whether or not the import is a cement, not specially provided for, within the meaning of item 494.-60, TSUS.

The testimony shows that Desmocoll 400 is the substance which both forms a thin layer between the two substrates being joined and bonds to each substrate. Furthermore, the record indicates that dissolution in a solvent does not *cause,* but merely facilitates, the bonding process. There is no evidence that the solvent catalytically or chemically takes part in the bonding process.

There is also no evidence to show that the addition of chlorinated rubber or other substances to the import, in order to improve bonding to different substrates, is chemically necessary to the formation of a bond. Nor has it been established that such added substances displace the hydroxylated polyurethane substrate bond, i. e., that the hydroxylated polyurethane is not bonding to both substrates.

We conclude that it is the import, per se, which bonds the two substrates together. Although the solvents and additives facilitate this process, the import is the substance which is the cement. Accordingly, we must *affirm* the Customs Court decision that the import is properly classifiable as a cement, not specially provided for, under item 494.60 of the TSUS, as modified.