(C.D. 2606)

BORDER BROKERAGE COMPANY, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 29, 1965)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Bernard J. Babb* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

WILSON, Judge: The merchandise under protest was invoiced as "N423 Dipping Paint, with titanium," "N429 Navaho Paint," "N430 Doeskin," "N431 Beige," and "S–914 Silver Gray Dip Paste—with Titanium" (plaintiff's exhibit 2, R. 17). The importations were classified and assessed by the collector under paragraph 24 of the Tariff Act of 1930 as chemical mixtures or alcoholic compounds not specially provided for, containing under 20 per centum alcohol, at the rate

of 20 cents per pound plus 25 per centum ad valorem. The importer claims that the merchandise is properly dutiable under the provisions of paragraph 66 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, providing for "Pigments, colors, stains, and paints * * * whether dry, mixed, or ground in or mixed with water, oil, or solutions other than oil, not specially provided for * * * Other," at the rate of 10½ per centum ad valorem, or, alternatively, under paragraph 89 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, at the rate of 15 per centum ad valorem as a compound or mixture containing titanium.

The statutes involved are as follows:

Paragraph 24, Tariff Act of 1930:

Chemical elements, and chemical and medicinal compounds, preparations, mixtures, and salts, distilled or essential oils, expressed or extracted oils, animal oils and greases, ethers and esters, flavoring and other extracts, and natural or synthetic fruit flavors, fruit esters, oils and essences, all the foregoing and their combinations when containing alcohol, and all articles consisting of vegetable or mineral objects immersed or placed in, or saturated with, alcohol, except perfumery and spirit varnishes, and all alcoholic compounds not specially provided for, if containing 20 per centum of alcohol or less, 20 cents per pound and 25 per centum ad valorem; * * *.

Paragraph 66, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108:

Pigments, colors, stains, and paints, including enamel paints, whether dry, mixed, or ground in or mixed with water, oil, or solutions other than oil, not specially provided for:

| * | * | * | * | * | * | * |

Other_____ 10½% ad val.

Paragraph 89, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802:

Titanium potassium oxalate, and all compounds and mixtures containing titanium_____ 15% ad val.

The evidence of the plaintiff consists of two exhibits (plaintiff's exhibits 1 and 2 (R. 10, R. 17)) and the oral testimony of W. D. Ekins, chief chemist and plant manager of Spectrum Chemicals, New Westminster, B.C., manufacturer of the merchandise here involved. The defendant introduced no testimony. The uncontradicted testimony of Mr. Ekins establishes the fact that plaintiff's exhibit 1 sets

forth the formulas used in the manufacture of the imported items designated as "N423 Dipping Paint, with titanium," "N429 Navaho Paint," "N430 Doeskin," and "N431 Beige." Mr. Ekins' testimony also shows that plaintiff's exhibit 2 is "a paint formula for a dip paste, which would be further reduced before being used" (R. 14), and is the formula for the item designated on the invoice, covered by entry 5943, as "S–914" (R. 17). The record discloses that both formulas were prepared by plaintiff's witness who stated that the business of Spectrum Chemicals was the preparation of formulas for and the manufacture of paints and stains. Plaintiff's witness further stated that the imported commodities were manufactured for use in coating cedar shakes, testifying, in this connection, as follows:

Q. And did you observe how they were used in the United States?—A. Yes. I directed their use.

Q. Were those manufactured to any particular specifications?—A. They were manufactured to specific formulas which I made up, developed myself, for an end use. [R. 6.]

It was admitted that the formula of the finished products contained ethyl alcohol in an amount less than 30 per centum. Mr. Ekins stated that it is normal to add solvents to a paint when it is purchased for a stain and explained that the alcohol was used for what is known in the trade as a "solvent" and that the "Solvent is that material which evaporates from the paint after application, but does not remain as part of the finished protective film" (R. 7). In this connection, the witness testified as follows:

Q. Why is the alcohol added?—A. There's an ingredient in the formula generically called bentone, which is a type of clay. The alcohol is added to adjust for what we call the polarity of the solvent system to promote the swelling of this clay. Clay acts as a bodying agent, which controls the body of the finished product for application purposes. [R. 11.]

Some of the items contained a coloring matter known as titanium (R. 13). It is a fair deduction from all of Mr. Ekins' testimony that the material as imported was suitable for no other commercial purpose except for use as a stain or paint for a protective covering after the addition of a thinner.

On cross-examination, plaintiff's witness testified in part as follows:

Q. Does this merchandise require a thinner?—A. This was formulated to require a thinner, yes, because of the type of operation it was to be used in.

Q. So then, in the condition as imported, it wasn't usable as a paint or a stain?—A. It could be used as a paint as it was imported.

Q. But it was not intended to be used as a paint or stain as imported?—A. It was not adapted to the equipment. It had to be reduced by the customer.

JUDGE WILSON. Would you put it into commerce as it was imported, so that the end user could put in thinner, as you put in?

THE WITNESSS Well, this is a little difficult to answer, in this respect. Some customers may like a paint this heavy in body, with this type of thickness to it. Then it could be used, and we would sell it this way.

JUDGE WILSON: Well, did you sell this this way, or did you thin it out yourself before putting it into commerce, or selling it?

THE WITNESS: No. We sold it to the customer this way.

JUDGE WILSON: So any thinner used, then, was used by the customer, according to your directions?

THE WITNESSS Yes. [R. 21–22.]

As heretofore noted, the plaintiff contends that the merchandise under protest is more specifically provided for under paragraph 66 of the tariff act, *supra*, than under paragraph 24, as classified, or that it is properly classifiable under paragraph 89 of the tariff act. Plaintiff's exhibits 1 and 2 show the items N423, N430, N431, and S–914 as containing substantial quantities of rutile titanium dioxide, which was described as a Canadian titanium pigment. In *Jarrell-Ash Co. v. United States*, 17 Cust. Ct. 176, Abstract 51285, the court, in holding certain merchandise designated as "R.U. Powder, F.558" properly classifiable under paragraph 89 of the Tariff Act of 1930, providing for "Titanium potassium oxalate, and all compounds and mixtures containing titanium," at page 177, stated:

The language of paragraph 89, *supra*, is clear and unambiguous, manifesting an intent to include therein all mixtures *containing* titanium. *United States* v. *Meadows & Co.*, 5 Ct. Cust. Appls. 532, T.D. 35177, gave expression to statutory use of the word "containing" by stating that "whatever was a part of the article as imported is in the tariff sense contained therein. It is a part of the article. The word 'contain' means to include or embrace." [Italics quoted.]

In *Comstock & Theakston* v. *United States*, 12 Ct. Cust. Appls. 502, T.D. 40698, it was held that "Kronos titanium," titanium oxide in physical combination with barium sulphate, used as a pigment in compounding paints, was more specifically provided for under paragraph 91 of the Tariff Act of 1922, which covered all compounds and mixtures containing titanium, than under paragraph 68 of the act, which covered pigments, colors, stains, and paints, not specially provided for. The court, at page 506, stated:

Congress included many different commodities known as "pigments" and "colors" in the act of 1922 in paragraphs 28, 47, 67, 70, 72, 73, 74, 75, 76, 77, 78, 79, and 91. It seems to us unusually clear that the framers of this act intended paragraph 68 to be the catchall paragraph for pigments, colors, stains, and paints, and that since it used titanium mixtures for the first time in paragraph 91, its intenton is too obvious to be overcome by the considerations urged by the importers. And

this view seems specially clear when we consider that the word "pigment" does not connote use except in a very general way. If "pigment" had been modified by some descriptive word indicating a particular use, the position of the importer would be more tenable.

The above-cited case was specifically called to the attention of Congress before the enactment of the Tariff Act of 1930, but no change in language was made in the new provisions covering merchandise in the predecessor paragraphs. Summary of Tariff Information, 1929, pages 327 and 414. It, accordingly, appears that it was the intent of Congress to provide, in paragraph 89, *supra*, for *all* compounds and mixtures containing titanium. Accordingly, we hold that the paints here which contain titanium, viz, items S–914, N423, N430, and N431, are properly classifiable under paragraph 89 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, at the rate of 15 per centum ad valorem under the provisions in said paragraph for "all compounds and mixtures containing titanium."

As to the remaining item herein involved, namely, N429, the record in the case at bar establishes, in our opinion, that this commodity was used as a stain or paint for a protective covering after the addition of a thinner. The defendant places great stress upon the fact that the imported paints or stains, including item N429, was in the form of a paste when exported and had to be further treated by the addition of a thinner before it could be used as a stain or paint. In the Encyclopedia of Chemical Technology, volume 9, 1952, at page 800, the following statement appears:

An emulsion paint is usually packaged as a paste paint which can be thinned for application with half a gallon of water to each gallon of the paste paint. This lowers the cost to the consumer because of the greater concentration of the paint in the container. It also avoids excessive pigment settling and creaming, or separation, of the emulsion.

It is obvious, therefore, that the word "paste," as applied to the imported substances in the condition exported, could refer to nothing more than their consistency; in other words, it is in the same range of meaning as such terms as "solid" and "liquid." The only logical meaning, therefore, to be given to the term "paste" in the instant case is paint or stain paste.

While the rule is well settled to the effect that imported merchandise must be classified in the condition as imported, as held in *United States* v. *Citroen*, 223 U.S. 407, and *United States* v. *Lo Curto & Funk*, 17 CCPA 342, T.D. 43777, that does not mean that, where goods prior to exportation have been so far processed or manufactured that they are commercially fit for only one use, they may not be made ready after importation for actual use without violating the general rule.

In the case at bar, the mere addition of the solvent to the product herein which, after importation, possesses the characteristics rendering it fit for use as a stain on shingles, fixes its classification prior to importation as a stain. There are numerous cases supporting the above-stated position. See *R. C. Williams & Co., Inc.* v. *United States*, 4 Cust. Ct. 227, C.D. 328, at 230; *Oxford University Press, N.Y., Inc.* v. *United States*, 20 Cust. Ct. 78, C.D. 1088.

The language of paragraph 66, *supra*, is more specific than that of paragraph 24, *supra*, of the said act. Accordingly, it takes precedence over the general descriptive language of paragraph 24 of the Tariff Act for chemical compounds or mixtures or alcoholic compounds, not specially provided for. *United States* v. *Electrolux Corporation*, 46 CCPA 143, C.A.D. 718. See also *Drakenfeld & Co.* v. *United States*, 2 Ct. Cust. Appls. 512, T.D. 32248.

We hold that the item designated as "N429 Navaho Paint" is properly classifiable under paragraph 66 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, at the rate of 10½ per centum ad valorem under the provisions therein for "Pigments * * * and paints * * * not specially provided for," as claimed.

Judgment will issue accordingly.