(C.D. 2800)

PLYWOOD & DOOR SOUTHERN CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 24, 1966)

*Richard Van Steenburgh; Milton Schwartz,* associate counsel, for the plaintiff.
*J. William Doolittle,* Acting Assistant Attorney General (*Sheila N. Ziff* and
*S. William Barr,* trial attorneys), for the defendant.

Before RICHARDSON, Judge, and DONLON, Senior Judge;
DONLON, J., concurring

RICHARDSON, Judge: The merchandise of these protests, consolidated for trial, consists of plywood imported at Houston, Texas, from Finland, and advanced in value upon appraisement. Plaintiff contends that liquidation of the covering entries is invalid because notice of appraisement was not given as required by law. Defendant contends that notice of appraisement was given, and further, that plaintiff has failed to prove non-delivery of such notice.

The applicable statutory and regulatory provisions governing notice of appraisement are set forth in 19 U.S.C.A., section 1501 (section 501,

Tariff Act of 1930, as amended) and 19 CFR 17.6, 1961 edition (section 17.6, Customs Regulations of 1943, as amended). Section 1501 reads in part as follows:

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value . . . . The decision of the appraiser . . . shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed . . . by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. . . .

And section 17.6 reads as follows:

The collector at the headquarters port, or the deputy collector in charge at any other port, shall promptly give notice of appraisement on customs Form 4301 when such notice is required by section 501, Tariff Act of 1930, as amended. The notice shall be prepared in duplicate and the retained copy, with the date of mailing or delivery noted thereon, shall be securely attached to the invoice.

At the trial evidence was presented in the form of a documentary exhibit (exhibit A) and the testimony of Allen Labay, import manager of the firm of Leslie B. Canion, customs broker, and Mary L. Bailey, former deputy collector of customs at the port of entry during the time in question, namely, November 20, 1961. As developed in the evidence and briefs of counsel the facts and issues in the instant case are in all material respects the same as those in the case of *R. W. Smith et al.* v. *United States*, 55 Cust. Ct. 216, C.D. 2578, decided October 4, 1965, by this division of the court, and involves testimony from the same person with respect to the practice employed at Houston by the collector to effect "personal delivery" of notice of appraisement. In *R. W. Smith et al.* v. *United States, supra*, owing to the fact that the retained copy of the alleged notice of appraisement did not contain the requisite notation of the date and manner of giving notice of appraisement employed by the collector, we held that the presumption of regularity did not obtain, in consequence of which we further held that defendant was put to its proof in the first instance to prove that notice of appraisement was given.

The proof offered by the defendant in the *R. W. Smith* case through the testimony of Miss Bailey was to the effect that she prepared the form 4301 and either placed it in the broker's box or mailed it if the broker had no box, that the form 4301 was mailed or deposited on the same date that the form was stamped, which in that case was January 22, 1960, and that she never deviated from that routine. Also, the attendance record for January 22, 1960, was placed in evidence and indicated that Miss Bailey was working on that day. We held this evidence to be insufficient to establish *prima facie* that personal de-

livery of notice of appraisement was made, and that it was, therefore, unnecessary for us to consider the plaintiff's evidence which was offered for the purpose of negativing the receipt of notice of appraisement. However, the court divided in the expression of its reasons for arriving at its conclusion, one judge ruling on the issue as a matter of law and the other judge disposing of the issue on the facts.

The instant case is in the same posture as the *R. W. Smith* case insofar as the facts are concerned. Here too, the testimony of plaintiff's witness, Allen Labay, was offered for the purpose of negativing the receipt of notice of appraisement. Mr. Labay testified, among other things, that either he or Mr. Canion would receive the notices of appraisement from the messenger employed by the firm, that the messenger would pick up the notices and other papers from the firm's box in the customs house and put them either on his desk or Mr. Canion's desk, that all notices were turned over to the witness, that the notices would be forwarded to the importer after notations concerning the appraisement were made on the file, and that he did not receive the notice of appraisement in this case, and that a search of his files did not disclose any such notice.

And here too, the testimony of Miss Bailey is substantially the same as her testimony in the *R. W. Smith* case. The only material difference between her testimony in the *R. W. Smith* case and that which she gave in the case at bar is that in the *R. W. Smith* case the practice was to both mail the notices in cases where there was no broker's box, and to deposit them in the brokers' boxes (January 22, 1960), whereas in the instant case the practice was only to deposit the notices in the brokers' boxes inasmuch as there were boxes for all the brokers (November 20, 1961). And as in the *R. W. Smith* case, the retained copies of the notices of appraisement at bar do not contain a notation of the date and manner of the giving of notice of appraisement.

On this record, it is contended by defendant that the court's decision should be opposite that reached in *R. W. Smith* for reasons, among which is the contention that the conclusion in that case is not supported by some of the cases cited there, namely, the cases of *Nippon Dry Goods Co.* v. *United States*, 11 Cust. Ct. 433, Reap. Dec. 5940, affirmed, *United States* v. *Nippon Dry Goods Co.*, 13 Cust. Ct. 373, Reap. Dec. 6054, and *Clayburgh Bros.* v. *United States*, 65 Treas. Dec. 1636, Reap. Dec. 3262. The defendant argues that in *Nippon Dry Goods Co.* v. *United States*, *supra*, the plaintiff had established a *prima facie* case of non-receipt and that thereafter the Government failed to establish the fact of mailing or delivery (referring to the *contention of the plaintiff* as stated at 11 Cust. Ct. 434 and *language of the court* as stated at 11 Cust. Ct. 435). In these cases involving

the giving of notice of appraisement the burden of proof as to the giving of such notice is always on the Government. *Clayton Chemical & Packaging Co.* v. *United States*, 38 Cust. Ct. 617, Reap. Dec. 8774. This is so because it is the Government's statutory responsibility to give notice of appraisement in cases where such notice is required to be given, in order to complete the appraisement. *Peabody & Co.* v. *United States*, 12 Ct. Cust. Appls. 354, T.D. 40491. This burden never shifts to the plaintiff-importer. Generally, however, the burden of going forward with the evidence initially falls upon the plaintiff who, in such cases, offers the first proofs. This is because the giving of notice of appraisement is deemed to have been done under and by virtue of a presumption of regularity which attaches to the collector's official acts. *United States* v. *Frank & Lambert*, 2 Ct. Cust. Appls. 239, T.D. 31973. And the proofs offered by a plaintiff at this stage of the proceedings invariably purport to negate the presumed delivery arising from the "regularity" of the collector's official acts, and take the form of evidence of non-receipt, non-issuance or non-delivery of the notice. *Orlex Dyes & Chemicals Corporation* v. *United States*, 41 Cust. Ct. 168, C.D. 2036; *Clayton Chemical & Packaging Co.* v. *United States*, 38 Cust. Ct. 617, Reap. Dec. 8774; *Compass Instrument & Optical Co., Inc.* v. *United States*, 47 Cust. Ct. 10, C.D. 2271. And when a plaintiff has met this initial burden of going forward with the evidence in a case where delivery of the notice is presumed, the case is in exactly the same posture as are those cases where irregularities place upon the Government the responsibility to offer first proofs in discharge of its burden of proof. In either case the court must resolve on the evidence the ultimate issue as to whether notice of appraisement was given.

Thus, in every such case the court is faced with the necessity of making two determinations, namely, (1) whether delivery is established perforce of the "regularity" of the collector's acts, and (2) whether delivery is established perforce of the evidence. Consequently, in *Astra Trading Corp.* v. *United States*, 52 Cust. Ct. 31, C.D. 2430, to which reference is made in defendant's brief, when we said at page 35, "* * * where * * * mandatory customs regulations relating to the giving of notice of appraisement have not been complied with by the Government, no presumption of delivery of such notice can be indulged, in consequence of which, the Government is required in the first instance to prove the giving of such notice, [citing the *Nippon Dry Goods Co.* case]," we were addressing ourselves exclusively to the first of the aforesaid determinations. See in this connection *R. W. Smith et al.* v. *United States, supra*, at pages 217–218. This, of course, does not mean and should not be taken to mean that a presumption of delivery could not in a proper case reattach upon the basis of affirmative proof that the notice was mailed.

However, from the standpoint of the evidence, the court must take the case as it is presented to it. In some cases plaintiffs, not wishing to hazard the course of the court's decision will offer evidence over and above that necessary to effect a shifting of the burden of going forward with the evidence to the defendant. And this, notwithstanding the fact that a *prima facie* case could be made out merely by the introduction into evidence of the official records disclosing patent irregularities that are sufficient to destroy any presumption of regularity insofar as the giving of notice of appraisement is concerned. But be that as it may, the court, faced with a surplusage of evidence, must at the outset decide the issues in the order in which their relevancy appears, separating the contentions of the parties from the bases of its decision. This is what the court undertook to do in *Nippon* and in the other cases in which the *Nippon* case was cited. And it is abundantly clear that the language of the court in *Nippon*—

I have carefully examined the statute and regulations pertinent to this matter, and, although attention is not drawn thereto in either of the briefs submitted, I find that the customs regulations in force and effect at the time in question contained a definite requirement that a notation as to date of mailing or delivery be made on the copy of the "Notice to Importer of Appraisement." . . .

\*　　\*　　\*　　\*　　\*　　\*　　\*

It is clear that there was no notation of the date of mailing or delivery made on the retained copy of the notice in the case at bar. The pertinent regulations were therefore not complied with, and the presumption in favor of the regularity of Mr. Collins' action in mailing the notice falls.

—was that court's disposition of the primary issue concerning the presumption of regularity independently of plaintiff's contention as to the legal effect of its proffered evidence, and that the ensuing language of the court—

From the evidence before me, I am satisfied that the notice in question was not mailed or delivered, and it follows that the provisions of section 501, *supra*, were not complied with on the part of the collector.

—was that court's disposition of the secondary and ultimate issue embracing the evidence itself. Therefore, in view of the clear delineation of the court's position in the *Nippon* case, we can find no merit to defendant's contention that the citation of that case in *Astra Trading Corp.* v. *United States, supra*, was not authority for the disposition of the primary issue as to the inapplicability of the presumption of regularity, in the *Astra* case. Neither can we find any basis for defendant's argument that *Clayburgh Bros.* v. *United States, supra*, is authority for a finding that the placement of a notice of appraisement in the broker's box raises a presumption of personal delivery of notice of appraisement. Our reading of the record in the *Clayburgh Bros.* case leads us to no such conclusion. There is no

indication in the record of the order in which the proofs were taken. However, the record in that case contains no patent irregularities that would destroy the presumption of regularity. Such a state of affairs would put plaintiff to the burden of offering first proofs. Consequently, when the court there stated—

I am of the opinion that the evidence introduced by the plaintiff is sufficient to rebut the presumption that notice of this appraisement was delivered personally to the consignee or his agent on November 16, 1929, and to establish that the usual formal notice of the appraisement never has been delivered or mailed to the said parties.

—it had before it evidence that the person whose job it was to pick up the notice was the broker's clerk, which of course, could only mean that "personal delivery" could not be effected upon the "consignee or his agent" as required by statute inasmuch as this person negatived the receipt of such notice, and was not, therefore, in a position to transmit the notice to his employer. And when the court further stated there—

. . . Under the provisions of section 501 of the act of 1922, no appeal could be filed until delivery of a notice of appraisement.

After carefully weighing all of the evidence introduced in the case at bar, I find that no written notice of appraisement which will comply with the statutory requirements of section 501 ever has been delivered or mailed to the consignee or his agent . . . .

—the court was addressing itself to the evidence proffered by the Government as to the placement of the notice in the broker's box. Hence, it is clear that the court did not regard the mere placement of such notice in the broker's box to raise a presumption of delivery as defendant contends for.

The defendant also argues that non-compliance with section 17.6 in giving notice of appraisement is not fatal to the operation of the presumption of regularity because such regulation is at best *directory* only. The doctrine of *mandatory* vs. *directory* regulations, as we understand it, addresses itself to the legal effect of official action in relation to compliance or non-compliance with a particular regulation. We are not aware of any holdings applying or extending this doctrine to the field of legal presumptions. And contrary to argument advanced by defendant's counsel, the customs regulations are promulgated for the benefit and guidance of the importing public as well as for the guidance of customs officers and personnel. Therefore, so long as a regulation is reasonable and consistent with the statutes it has the force of law and is binding on the customs officials as well as the general public and must be enforced by the courts. Therefore, to the extent that a customs regulation is a proper one, it is mandatory for customs officials to observe and follow it, and this, whether or not it is mandatory for the Secretary of the Treasury to adopt and promulgate

such regulation. Section 17.6 falls in this category of proper regulations. And in view of the non-compliance by the collector with the requirements of this regulation, it cannot be said that "regularity" attends the collector's acts in this instance.

The court agrees with defendant that the issue in this case is not whether there was a compliance with the subject regulation but whether notice of appraisement was given. The office of the presumption of regularity (in which the regulations play a part) is to aid the court in arriving at a conclusion with respect to the issue. However, in any dispute arising over the question of whether notice of appraisement was given, compliance with section 17.6 operates to apprise the importing public as well as the customs officials of the critical facts, namely, the date and manner in which the collector discharged his statutory obligation to give notice of appraisement. Why then, should the court presume that notice was given, if the collector does not follow the regulation prescribed by the Secretary of the Treasury for his guidance in giving such notice? Such information enables the importer as well as the Government to properly prepare for trial of the issue. Therefore, the significance of compliance or non-compliance with these regulations cannot be diminished in the overall appraisal of the effect of non-compliance on the burden of going forward with the evidence. The construction which defendant would place upon non-compliance with "proper" regulations would operate to make non-compliance therewith a sword rather than a shield—enabling the Government to benefit from its own default.

There is no plausible reason for according the practice of placing notices of appraisement in receptacles maintained in the collector's office the same status as is accorded the deposit of mail in a mail box or letter box. For beyond the physical similarities which both practices entail, the analogy vanishes. Notices deposited in collector's receptacles are still in the custody and control of the collector, and are more or less accessible to the general public as well as to the collector's staff, both authorized and unauthorized. Not so, with deposits of mail. The act of mailing a letter places that letter beyond the custody and control of the collector and the general public, and reduces the chance of mishandling, interception or misdirection of the same, and hence, non-receipt by the addressee. This is reason enough why Congress would not intend so important a proceeding as is the giving of notice of appraisement to hinge on a happenstance process of placing notices of appraisement in brokers' boxes to await the arrival of whomsoever will come to receive it, be they the statutory designees or not. Bear in mind the fact that the giving of notice of appraisement sets into motion a statute of limitations which affects and controls important rights of the importing public.

316

The attempt by the Government to equate the placement of notices of appraisement in the broker's box with the mailing of such notices upon the authority of *United States ex rel. Helmecke* v. *Rice, Post Commander*, etc., 281 Fed. 326 (case limited by us in the *R. W. Smith* case and subsequently distinguished by us in *Charles M. Schayer* v. *United States*, 56 Cust. Ct. 79, C.D. 2614, (decided February 2, 1966), and at the same time labeling the practice as "personal delivery" is contradictory. The act of mailing something has never, to our knowledge, been regarded as effecting personal delivery, and has at best only been thought of in terms of effecting delivery. And, if as defendant contends, an analogous situation exists between the two practices the mere use of the word "delivery" would suffice to describe the object of either practice. But the fact that Congress elected to add the word "personal" to the word "delivery" indicates an intention to require more than that implied by the word "delivery."

And suppose no one picked up the notices from the broker's box even if they were placed therein by the collector. Could the mere placement of such notices in the broker's box (still in the collector's custody and control) constitute personal delivery so as to commence the running of the 30 day period of limitation within which appeal for reappraisement would have to be taken? And would not the onus be shifted in such an event from the collector to give notice, to the importer to receive it? The court can find no official sanction for this practice. And granted that the practice exists by sufferance and works on occasion, the court must still reckon with the fact that the practice at best is but an anachronism by virtue of the adoption of a new section 17.6 of the Customs Manual by amendment 735 of August, 1962 under which rule the collector is required to procure the personal receipt of the importer, his agent or his attorney when "notice of appraisement" is "personally delivered" to such person.

Personal delivery of notice of appraisement by deposit in the broker's box was not adjudged in the *R. W. Smith* case. The practice was expressly held not to constitute personal delivery in one opinion, and a decision on the question was not made in the concurring opinion.

The holding of the court in *R. W. Smith* amply disposes of the issues in the instant case insofar as they relate to the practice at Houston in giving "personal delivery" of notice of appraisement. Accordingly, on the instant record we hold that defendant has failed to discharge its burden of proof by competent evidence that notice of appraisement was given. As such, appraisement was incomplete and the liquidation based thereon was invalid.

Pursuant to the provisions of 28 U.S.C.A., section 2636(d), the matter is remanded to a single judge of this court to determine the

proper dutiable value of the involved merchandise in the manner provided by law.

Judgment will be entered accordingly.

CONCURRING OPINION

DONLON, Judge: On substantially the same grounds recited in my opinions in *R. W. Smith et al.* v. *United States*, 55 Cust. Ct. 216, C.D. 2578, and in *Charles M. Schayer* v. *United States*, 56 Cust. Ct. 79, C.D. 2614, and after review of the record before us, I find that the evidence as to deposit of notice of reappraisement in the box which was maintained by plaintiff at the customhouse and regularly used for the purpose of receiving delivery of collector's notices to plaintiff is not conclusive. On the evidentiary record, I concur in the judgment order.