**DELAWARE WATCH CO., Inc.**

v.

**UNITED STATES.**

R.D. 11698; Reappraisements R64/9485,
R64/9489, R64/14718.

United States Customs Court.
April 10, 1970.

Webster, Sheffield, Fleischmann,
Hitchcock & Brookfield, New York City
(William H. Hogeland, Jr., and Michael
F. Johnston, New York City, of coun-
sel), for plaintiff.

William D. Ruckelshaus, Asst. Atty.
Gen. (Glenn E. Harris, New York City,
trial attorney), for defendant.

NEWMAN, Judge:

These three consolidated appeals for reappraisement involve certain watch movements exported from the Virgin Islands during the period from July 1961 to May 1962, and entered at the port of New York. The watch movements contained Swiss parts, which had been exported to the Virgin Islands from Germany.

The merchandise was entered as free of duty under section 301 of the Tariff Act of 1930, as amended. That section provides, *inter alia*, that all articles, the growth, product, or manufacture of the insular possessions of the United States, except Puerto Rico, which do not contain foreign materials to the value of more than 50 per centum of their total value, are entitled to free entry; but if the value of the foreign materials exceeds 50 per centum of their total value, they are dutiable.

The watch movements were entered at the invoice values, and in each case they were appraised as entered, on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165. Additionally, the customs examiner made a notation on each invoice, stating: "Includes value of foreign materials in excess of 50%." However, no specific values of foreign materials are stated on the invoices by the examiner. The examiner's report was approved by the appraiser.

There is no dispute respecting the unit values (total values) for the watch movements. However, in order to obtain the benefit of free entry under section 301, as amended plaintiff claims that the values of the included foreign materials (Swiss parts) constitute *less* than 50 per centum of the unit values of the watch movements.

The following prices represent the appraised unit values (total values) for the watch movements, the values of the foreign materials claimed by defendant, and the values of the foreign materials claimed by the plaintiff:

| Reappraisement Nos. | Unit Values for Watch movements | Value of foreign materials * Defendant | Plaintiff |
|---|---|---|---|
| R64/9485 | $7.25 | $3.856906 | $3.45 |
| R64/9489 | $5.85 | $3.415746 | $2.46 |
| R64/14718 | $6.60 | $3.706266 | $2.77 |

*(In each movement)

---

The sole issue for determination then, relates to the values of the foreign materials. I have concluded that the values claimed by plaintiff are correct.

STATUTES INVOLVED

Section 301, Tariff Act of 1930, as amended by the Customs Simplification Act of 1954:

"There shall be levied, collected, and paid upon all articles coming into the United States from any of its insular possessions, except Puerto Rico, the rates of duty which are required to be levied, collected, and paid upon like articles imported from foreign countries; except that all articles the growth or product of any such possession, or manufactured or produced in any such possession from materials the growth, product, or manufacture of any such possession or of the United States, or of both, which do not contain foreign materials to the value of more than 50 per centum of their total value, coming into the United States directly from any such possession, and all articles previously imported into the United States with payment of all applicable duties and taxes imposed upon or by reason of importation which are shipped from

the United States, without remission, refund, or drawback of such duties or taxes, directly to the possession from which it is being returned by direct shipment, shall be admitted free of duty upon compliance with such regulations as to proof of origin as may be prescribed by the Secretary of the Treasury. In determining whether an article produced or manufactured in any such insular possession contains foreign materials to the value of more than 50 per centum, no material shall be considered foreign which, at the time such article is entered, or withdrawn from warehouse, in the United States for consumption, may be imported into the United States from a foreign country, other than Cuba or the Philippine Republic, free of duty."

Section 402a(a) of the Tariff Act of 1930, as amended, provides:

### VALUE (ALTERNATIVE).

(a) Basis.—For the purposes of this Act the value of imported articles designated by the Secretary of the Treasury as provided for in section 6(a) of the Customs Simplification Act of 1956 shall be—

(1) The foreign value or the export value, whichever is higher;

(2) If the appraiser determines that neither the foreign value nor the export value can be satisfactorily ascertained, then the United States value;

(3) If the appraiser determines that neither the foreign value, the export value, nor the United States value can be satisfactorily ascertained, then the cost of production;

(4) In the case of an article with respect to which there is in effect under section 336 a rate of duty based upon the American selling price of a domestic article, then the American selling price of such article.

Section 402(a) of the Tariff Act of 1930, as amended, provides:

### VALUE.

(a) Basis.—Except as otherwise specifically provided for in this Act, the value of imported merchandise for the purposes of this Act shall be—

(1) the export value, or

(2) if the export value cannot be determined satisfactorily, then the United States value, or

(3) if neither the export value nor the United States value can be determined satisfactorily, then the constructed value;

except that, in the case of an imported article subject to a rate of duty based on the American selling price of a domestic article, such value shall be—

(4) the American selling price of such domestic article.

### REGULATION INVOLVED

Section 7.8(d) of the Customs Regulations (19 CFR (1961 ed.) § 7.8(d)) provides:

In determining whether an article produced or manufactured in any such insular possession contains foreign materials to the value of more than 50 per centum, a comparison shall be made between the actual purchase price of the foreign materials (excluding any material which at the time such article is entered, or withdrawn from warehouse, for consumption in the United States, may be imported into the United States from a foreign country, other than Cuba or the Philippine Republic, free of duty), plus the cost of transportation to such insular possession (but excluding duties and taxes, if any, assessed by the insular possession and any charges which may accrue after landing), and the final appraised value in the United States determined in accordance with section 402, Tariff Act of 1930, as amended, of the article brought into the United States.

## I.

## JURISDICTION

Initially, the court is faced with the threshold jurisdictional question raised by defendant for the second time in this case.

Prior to the trial on the merits, defendant challenged the jurisdiction of the court by motion to dismiss; and alternatively moved for a summary judgment affirming the appraised values on the ground that the only issue cognizable in reappraisement proceedings relates to the unit values of the merchandise, and that there was no dispute as to the unit values. In a memorandum accompanying an order dated January 16, 1968 my predecessor in this case, Judge Lindley Beckworth,[1] denied the Government's motions, holding that the court has jurisdiction to review that part of the appraisement concerning the value of the foreign materials included in the watch movements. Delaware Watch Co., Inc. v. United States, 60 Cust.Ct. 747, R.D. 11467 (1968).

■ Now, in its post-trial brief, defendant "readopts" the arguments previously urged in its memorandum supporting its motion to dismiss, and additionally, refers to the testimony of its witness, the customs examiner who made the notations on the invoices respecting the value of the foreign materials. Stated differently, I am now urged to vacate the order of Judge Beckworth and to dismiss plaintiff's appeals for reappraisement. Although it is entirely within my discretion to reconsider the propriety of Judge Beckworth's ruling, I shall refrain from doing so at this late stage of the proceedings. Under all the circumstances herein, the court's prior jurisdictional ruling will be deemed "the law of the case." Dictograph Products Company v. Sonotone Corporation, 2 Cir., 230 F.2d 131 (1956); Beedy v.

Washington Water Power Co., 9 Cir., 238 F.2d 123 (1956); TCF Film Corporation v. Gourley, 3 Cir., 240 F.2d 711 (1957); Castner v. First National Bank of Anchorage, 9 Cir., 278 F.2d 376 (1960); Chain Locations of America, Inc. v. East Hudson Parkway Authority, D.C., 280 F.Supp. 396 (1967). See also Moore's Federal Practice (second edition) Vol. 1B, § 0.404[1] and § 0.404[4].

## II.

## "VALUE" OF FOREIGN MATERIALS

To briefly reiterate, the imported watch movements were appraised at the entered unit values, and plaintiff does not dispute that aspect of the appraisements. What plaintiff contests is that part of the appraisements in which the values of the foreign materials were determined to exceed 50 per centum of the appraised values of the watch movements.

■ It is fundamental, of course, that the appraiser's determination of value is presumptively correct. Hence, it follows that the appraiser's determinations respecting the values of the foreign materials herein are presumptively correct. Plaintiff, therefore, has the twofold burden of negating the valuations by the appraising official, and also of affirmatively proving the values claimed. Cf. Kittleson v. United States, 40 CCPA 85, C.A.D. 502 (1952), and cases cited therein. I find that plaintiff has met its dual burden of proof.

This case appears to be a novel reappraisement proceeding in that plaintiff does not rely upon any of the statutory bases provided in section 402 or 402a. Instead, relying upon § 7.8(d) of the Customs Regulations, plaintiff claims that the watch movements do not contain foreign materials to the value of more than 50 per centum of the total value of the merchandise, *predicated upon the actual purchase price of the*

---

1. Judge Beckworth has resigned from the Customs Court, and the parties have entered into a written stipulation resubmitting the case before me for decision.

*foreign materials, plus the cost of transportation to the Virgin Islands.*[2]

Defendant, while admitting that the purchase prices claimed by plaintiff are correct,[3] insists that such prices do not represent the "value" contemplated by section 301, as amended. The cornerstone of the Government's position is that the value of foreign materials must be determined in accordance with the formulae prescribed by sections 402 and 402a of the Tariff Act of 1930, as amended. In the instant case, defendant contends that the values of the foreign materials are subject to determination under section 402(b), as amended, which reads as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

If defendant's contention be correct, then § 7.8(d) of the Customs Regulations is invalid, and plaintiff has failed in its burden of proof.

Thus, the issue is narrowed to whether proof of the actual purchase prices of foreign materials, in compliance with § 7.8(d) of the Customs Regulations, is sufficient to sustain plaintiff's burden, or whether evidence of value pursuant to section 402(b) is required.

Section 301, as amended, is not the first tariff provision requiring the determination of the value of foreign materials. Such determination was previously required concerning articles imported from the Philippine Islands,[4] and concerning shipments between the Virgin Islands and the United States.[5]

Section 301, as amended, was enacted on September 1, 1954 and became effective on October 1, 1954. The customs regulations relating to insular possessions were amended by the Secretary of the Treasury on September 30, 1954 to conform to the changes in the law made by the Customs Simplification Act. For the first time, there appeared a regulation prescribing the method for determining the value of foreign materials. Such amended regulation is found in § 7.8(d), which was promulgated as aforesaid on September 30, 1954, T.D. 53617.[6] Is that regulation at such variance with the statutory provisions that it should be held invalid?

Defendant argues that the term "value" when used in relation to foreign materials must be given the same construction as the term "total value" used in

---

2. For brevity, a reference hereinafter to the "actual purchase price" of the foreign materials shall include both the purchase price and the cost of transportation.

3. Defendant's concession obviates the need for a summary of the voluminous oral and documentary evidence presented at the trial, which related mainly to proof of the actual purchase prices for the Swiss parts exported to the Virgin Islands from Germany. Plaintiff made no attempt to prove the value of the foreign materials in accordance with section 402, as amended.

4. Section 5, Tariff Act of 1909; Section IV. C., Tariff Act of 1913; Section 301, Tariff Acts of 1922 and 1930.

5. 48 U.S.C. § 1394. See also 48 U.S.C. § 1644.

6. The citation of authority for the regulation is 19 U.S.C. §§ 66, 1624. Those sections delegate to the Secretary the power to issue regulations in addition to those which he is specifically authorized to promulgate under a particular statute. For example, in section 301, Tariff Act of 1930, as amended, the Secretary was specifically authorized to issue regulations pertaining to proof of origin.

connection with the imported article. Both parties agree that "total value" is properly determinable under sections 402 and 402a.

 I do not think that the term "value" (with reference to foreign materials) must be construed as synonymous with the term "total value" when referring to the imported article. Sections 402 and 402a are expressly applicable in determining the values of "imported merchandise" or "imported articles"; and I see nothing in those provisions expressly covering the valuation of foreign materials included in articles imported from an insular possession.

Moreover, to hold that section 301, as amended, *requires* that the value of foreign materials be determined in accordance with sections 402 and 402a, as defendant urges, would be not merely construing the term "value," but rather would be interpolating a requirement into the statute, which Congress chose to omit. It is noteworthy, for example, that in the Customs Simplification Act of 1954 (which amended section 301), Congress explicitly made section 402 applicable under certain contingencies for determining the "value of repairs, alterations, or processing outside the United States" in connection with articles exported from the United States and returned. Paragraph 1615(g) (4), Tariff Act of 1930, as amended.[7] Significantly, however, no provision was inserted by Congress in section 301, as amended, making section 402 applicable to the value of foreign materials. Accordingly, it is reasonable to conclude that Congress did not intend to require that the "value" of foreign materials be determined under section 402 or 402a, but rather that Congress intended to give the customs officials reasonable discretion to employ any appropriate method. Section 7.8(d) of the Customs Regulations is not, in my opinion, inconsistent with such intent.

Additionally, I have noted that in General Headnote 3(a), Tariff Schedules of the United States, covering products of insular possessions and corresponding to section 301, as amended, Congress adopted substantially the same language respecting the value of foreign materials as is found in the Tariff Act of 1930. Congress, "we must assume" was aware of § 7.8(d) of the Customs Regulations and presumably was satisfied with it. Cf. Taft v. Commissioner of Internal Revenue, 304 U.S. 351, 357, 58 S.Ct. 891, 82 L.Ed. 1393 (1938). And see United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 95, 56 S.Ct. 353, 80 L.Ed. 500 (1936); McFeely v. Commissioner of Internal Revenue, 296 U.S. 102, 110, 56 S.Ct. 54, 80 L.Ed. 83 (1935), reh. den. 296 U.S. 664, 56 S.Ct. 304, 80 L.Ed. 473 (1935).

Indeed, § 7.8 of the Customs Regulations was amended in 1963 to conform with changes in law effected by the Tariff Classification Act of 1962; and consequently, § 7.8(d) remains to this day in full force and effect in connection with General Headnote 3(a), *supra.* See 98 Treas.Dec. 465, T.D. 55978.

Although the merchandise in this case was imported prior to the effective date of the tariff schedules, the subsequent actions of Congress and the Secretary of the Treasury relative to General Headnote 3(a) and the amendment of § 7.8 respectively are significant. In Cammarano v. United States, 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959), the issues involved the interpretation and validity of certain Treasury Regulations construing "ordinary and necessary" business expenses under § 23(a) (1) (A) of the Internal Revenue Code of 1939. The Supreme Court observed that in the 1954 re-enactment of the Internal Revenue Code, Congress again adopted the "ordinary and necessary" provision without substantive change. In this

---

7. Cf. headnotes 2(a) and 3(a), schedule 8, part 1, subpart B, Tariff Schedules of the United States, pertaining to the determination of "value" respecting articles advanced or improved abroad.

**1326**

connection, the Court commented (id. at 510, 79 S.Ct. at 532):

 * * * Although the tax years involved in the cases before us are 1948 and 1950, and a 1954 re-enactment of course cannot conclusively demonstrate the propriety of an administrative and judicial interpretation and application as made to transactions occurring before the re-enactment, the 1954 action of Congress is significant as indicating satisfaction with the interpretation consistently given the statute by the Regulations here at issue and demonstrating its prior intent. Cf. United States v. Stafoff, 260 U.S. 477, 480, 43 S.Ct. 197, 67 L. Ed. 358.

Here, to paraphrase the above excerpt of the United States Supreme Court decision in *Cammarano*:

 " * * * the [1962] action of Congress is significant as indicating satisfaction with the interpretation consistently given the statute [Section 301, as amended] by the Regulations here at issue [Section 7.8(d)] and demonstrating its prior intent."

The Government not only has attacked the validity of § 7.8(d) of the Customs Regulations, but its brief strenuously denied that such regulation even existed prior to December 20, 1960. That denial is erroneous. In point of fact, the regulation was virtually contemporaneous with the effective date of section 301, as amended, October 1, 1954, T.D. 53617. It may be emphasized that § 7.8(d), the validity of which is now questioned by the Government for the first time, has been observed by the Bureau of Customs since it was promulgated on September 30, 1954.[8] As the Court of Customs Ap-

peals stated in Vitelli & Son v. United States, 7 Ct.Cust.Appls. 243, 256, T.D. 36544 (1916), rev'd on other grounds, 250 U.S. 355, 39 S.Ct. 544, 63 L.Ed. 1028 (1919):

 "When there has been a long acquiescence in a regulation" (Treasury) "and by it rights of parties for many years have been determined and adjusted, it is not to be disregarded without the most cogent and persuasive reasons. United States v. Hill, 120 U.S. 169, 182, [7 S.Ct. 510, 30 L. Ed. 627]; United States v. Philbrick, 120 U.S. 52, 59, [7 S.Ct. 413, 30 L.Ed. 559]; Brown v. United States, 113 U. S. 568, 571, [5 S.Ct. 648, 28 L.Ed. 1079]." Robertson v. Downing, 127 U.S. 607, 613, 8 S.Ct. 1328, 1330–1331, 32 L.Ed. 269.

 ■ Defendant also argues that § 7.-8(d) of the Customs Regulations is not "mandatory," but rather "falls within that class of regulations which are addressed to the Collector of Customs for guidance in the conduct of the business of his office," citing United States v. Browne Vintners Co., Inc., 34 CCPA 112, 116 C.A.D. 351 (1946). While it is true that *Browne* makes a distinction between those regulations which are "mandatory" and those which are merely "directory," such distinction is not significant in the present case. Here, there is no issue as to whether compliance with a regulation by the importer is a condition precedent to recovery. Moreover, even assuming that § 7.8(d) is not a "mandatory" regulation, as contended by defendant, it does not follow that such regulation may be disregarded. Indeed, *Browne* states (id. at 116):

 In holding that compliance with the regulation here in issue * * * is

8. Customs Form 3229 was issued in December 1954, as indicated in the upper left-hand corner of the form, and recites Customs Regulations §§ 7.8 and 9.9. The form is a "Certificate of origin covering articles shipped from insular possessions (except Puerto Rico) to the United States." There is a space on the form for the shipper to declare the description of any foreign materials contained in the exported articles and the "value" of such foreign materials. The bottom of the form states: " 'VALUE,' as used in this certificate refers to the actual purchase price of the quantity of each foreign material used, plus the transportation charges to the port of arrival in the insular possession, but excluding duty or any charges which may accrue after landing in an insular possession."

not a condition precedent to recovery, the court does not determine that in a proper case an administrative regulation may not have the force and effect of law and be binding on the parties under the same rule of law that applies to a mandatory regulation.

Again, in Plywood & Door Southern Corp. v. United States, 57 Cust.Ct. 309, 314–315, C.D. 2800 (1966), this court noted:

> * * * The doctrine of *mandatory* vs. *directory* regulations, as we understand it, addresses itself to the legal effect of official action in relation to compliance or noncompliance with a particular regulation. * * * And contrary to argument advanced by defendant's counsel, the customs regulations are promulgated for the benefit and guidance of the importing public as well as for the guidance of customs officers and personnel. Therefore, *so long as a regulation is reasonable and consistent with the statutes it has the force of law and is binding on the customs officials as well as the general public and must be enforced by the courts. Therefore, to the extent that a customs regulation is a proper one, it is mandatory for customs officials to observe and follow it, and this, whether or not it is mandatory for the Secretary of Treasury to adopt and promulgate such regulation.* * * * [Emphasis is added.]

Finally, the Government argues that § 7.8(d) does not purport to define "value" as that word is used in section 301, as amended. I agree. But the regulation does, nevertheless, direct the customs officials concerning the manner in which the value of foreign materials is to be ascertained. Clearly, it was mandatory for the customs officials to follow such method. Section 502(c) of the Tariff Act of 1930. The testimony of the customs examiner who made the notations on the invoice respecting the value of the foreign materials shows that, in fact, he made an effort to calculate the actual purchase prices of the Swiss parts and to comply with the regulation. (R. 163–167.)

In summary, § 7.8(d) of the Customs Regulations is valid and has the force and effect of law; and plaintiff has sustained its burden of proof in this case by establishing the actual purchase prices of the foreign materials.

### FINDINGS OF FACT

1. The merchandise covered by these three consolidated appeals for reappraisement consists of three different types of watch movements imported from the Virgin Islands during the period from July 1961 to May 1962.

2. The involved movements were appraised at values of $7.25 (R64/9485), $5.85 (R64/9489), and $6.60 (R64/14718) each, under the provisions of section 402(b) of the Tariff Act of 1930, as amended, and plaintiff accepts such appraised unit values.

3. The watch movements contained Swiss parts, exported to the Virgin Islands from Germany.

4. The appraiser determined that the values (viz., purchase prices) of the foreign materials (Swiss parts) were in excess of 50 per centum of the total values (appraised values) of the watch movements. The specific values of the foreign materials found by the appraiser were: $3.85 (R64/9485), $3.41 (R64/9489), and $3.70 (R64/14718).

5. The actual purchase prices of the foreign materials, contained in the imported watch movements, including the cost of transportation of the foreign materials to the Virgin Islands were: $3.45 (R64/9485), $2.46 (R64/9489), and $2.77 (R64/13718). These purchase prices are not disputed by defendant.

### CONCLUSIONS OF LAW

1. The value of foreign materials in articles imported from the Virgin Islands is determinable on the basis of the actual purchase price of the foreign materials, plus the cost of transportation of such materials to the Virgin Islands, as prescribed by 19 CFR § 7.8(d).

**1328**

2. Plaintiff has overcome the presumption of correctness attaching to the appraiser's determination that the values of the foreign materials were in excess of 50 per centum of the total values (appraised values) of the watch movements.

Judgment will be entered accordingly.

