**Ruth MILLER, Executrix of the Estate of Guy Homer Markham Jeffrey aka Mark Jeffrey a/c Burns & Towne West, Inc.**

**v.**

**UNITED STATES.**

**C.D. 4473, Court No. 71-11-01775.**

United States Customs Court.

Oct. 11, 1973.

Stein & Shostak, Los Angeles, Cal. (Leonard M. Fertman, Los Angeles, Cal., of counsel), for plaintiff.

Irving Jaffe, Acting Asst. Atty. Gen., James Caffentzis, New York City, trial attorney, for defendant.

RICHARDSON, Judge:

The merchandise covered by the entries in this action was advanced in value upon appraisement following entry at the port of Los Angeles-Long Beach, Calif. in 1969. It is alleged in the complaint that the appraisement and liquidation of the subject entries are null and void because notice of appraisement was not given in accordance with 19 U.S.C.A., section 1501 (section 501, Tariff Act of 1930, as amended.)[1]

The involved entries were made in the name of plaintiff-customs broker Mark

1. (a) The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court.

Jeffrey, (who died prior to trial and was substituted for by Ruth Miller, the executrix of his estate) for the account of Burns & Towne West, Inc. The issue here is whether notice of appraisement was given by mail to the customs broker on May 4, 1970, the date the Government is said to have mailed the alleged notice of appraisement. Four witnesses gave testimony on this issue at the trial.

Karen Yost testified that on or about May 4, 1970, she was working for plaintiff Mark Jeffrey, that her job consisted of doing the bookkeeping, handling the incoming mail, and general duties, that it was her responsibility to open mail delivered by the postman or picked up at the post office and give it to either Lynnette Keffer or Mr. Jeffrey, and that with respect to customs form 5561 [Notice of Appraisement] she would give them to Lynnette Keffer, unless they pertained to Burns & Towne West entries, in which case she would give them to Mr. Jeffrey.

Upon being shown the entries at bar, the witness testified that she was familiar with them, had no recollection of ever receiving notice of appraisement on these entries, and that at the request of Mr. Jeffrey she had participated with other employees in the office in an unsuccessful search of files and desks to find notices of appraisement relating to these entries—the search being conducted after bills for increased duties on the entries had been received from customs.

Lynnette Keffer testified that on or about May 4, 1970, she was in the employ of plaintiff Mark Jeffrey handling almost all incoming shipments, working them up, typing entries, and overseeing the general customs work and correspondence related to entries, and that she was familiar with the entries involved in this case, having typed them up. As to these particular entries she testified (R. 21–22):

> Q. Now, at sometime while you were working with Mark Jeffrey, did Mr. Jeffrey ask you whether or not you had ever received a notice of action, 5561, from customs, or from soneone [sic] in the office, on these four particular entries?—A. When he got the increases for them, he kind of hit the ceiling, and got everybody in one room and started having a fit and had everybody search their own desk and start looking through Burns and Towne files to see if we could find one because he talked to customs and they said they had sent one. And we couldn't find one for those entries.
>
> Q. What was your examination, in that case?—A. I looked through my entire office and went with Mark and went through many of the Burns and Towne files that did have notices in them and checked the numbers to make sure they were in the right file.
>
> Q. And in no instances did you find notices of action for these four entries?—A. No, not for the large penalties.
>
> Q. The increases?—A. No.

On cross-examination of the witness it was brought out that Mr. Jeffrey had been expecting some increases on the Burns & Towne entries, and, therefore, had undertaken to handle these cases personally. Consequently, the witness Keffer had not, since February, 1970, received on her desk notices of appraisement relating to any Burns & Towne entries.

This was the substance of plaintiff's evidence, at the conclusion of which, defendant moved to dismiss the action on the ground that plaintiff failed to establish a *prima facie* case in that plaintiff had failed to prove non-receipt of notice of appraisement affecting the entries at bar. The court denied the motion, whereupon, defendant called its witnesses to give testimony in the case.

Virginia Noordweir testified that in May, 1970, she was an import specialist, that she is familiar with the copies of customs form 5561 attached to entries at bar, that she typed them in accordance with responsibility assigned by Mr. Ramsdell to the senior import specialist to type notices of appraisement, and that after typing them she secured them

to the entries and gave them to the document control clerk, Florence Schow, who is now Mrs. Beck. The witness further testified (R. 28–29):

> Q. Now, after you gave these particular 5561's to Mrs. Schow, did something subsequently happen?—A. Yes.
>
> Q. And what was that, please?—A. She brought back—keep in mind we were dealing with 20 to 25 entries, of which I had plotted the liquidation process and typed up notices on all of them. She brought back a dozen to 20 and pointed out to me that I had, in error, typed Burns and Towne West as the importer of record when, in fact, Mark Jeffrey was the importer of record on these particular entries.
>
> Q. Who crossed out the name Burns and Towne West on these?—A. Mrs. Schow.
>
> Q. And who typed in Mark Jeffrey?—A. Mrs. Schow.
>
> Q. That's the same Mrs. Schow that was responsible for mailing, is that correct?—A. Right.

Florence Beck testified that she was working for customs, air transportation, in May, 1970, and her name at that time was Mrs. Schow. The witness was shown the copies of customs form 5561 attached to entries at bar and identified her initials F.S. on them. She testified that she had sole responsibility from Mr. Ramsdell to mail notices of appraisement to importers of record. She stated in substance that, as to the entries at bar, she corrected the 5561's by crossing out the name and address of Burns & Towne West and typing in the name of Mark Jeffrey. In the place for an address on the yellow copy of the notice in the official papers file the following appears:

> Mark Jeffrey
> ~~Burns & Towne West, Inc.~~
> ~~1232 W. Collins Avenue~~
> ~~Orange~~, ~~California~~

It is noted that after striking the name and address of Burns & Towne West, Inc., the name Mark Jeffrey, without any address, was substituted. However, Mrs. Beck testified that she used a non-window type envelope, typed the name and address of Mark Jeffrey on said envelope, that she gave the 5561's having Mark Jeffrey's name, without an address, in triplicate to Mr. Ramsdell who signed and returned them to her, that she separated the copies and placed the white and blue copies in the typed out envelope, that on May 4, 1970, before 9:30 a. m. she placed the sealed envelope containing these 5561's in an outgoing mail receptacle maintained in her office by customs for this purpose, that on the same day she date stamped and certified as to the mailing of these 5561's on the retained yellow file copies, and observed a postal clerk from the post office not more than 3 feet away from her pick up all of the outgoing mail from this receptacle at about 9:30 a. m., leaving nothing behind.

This is the substance of defendant's evidence. At the conclusion of the case defendant renewed its motion to dismiss the action previously made at the conclusion of plaintiff's case. The motion was again denied by the court. In this connection the court stated (R. 49):

> JUDGE RICHARDSON: I think there are sufficient deviations from the normal procedure of handling the notices of appraisement to warrant the case being submitted on its merits and the motion to dismiss will be denied.

Plaintiff argues that the alleged notices of appraisement at bar are defective on their face in that they lack a designation of the address of the noticee Mark Jeffrey, and, therefore, cannot constitute legal notice of appraisement, citing the cases of Mr. Roy Jennings, J. T. Steeb & Company, Inc. v. United States, 63 Cust.Ct. 313, C.D. 3914 (1969), and Astra Trading Corp. v. United States, 52 Cust.Ct. 31, C.D. 2430 (1964). Plaintiff also argues that its proof of nonreceipt of the notices in dispute, together with evidence of defendant's failure to "mail" the notices, establishes that the required notice has not been given in this case, citing United States v. International Importers, Inc., 55 CCPA 43, C.A.D. 932 (1968); Orlex Dyes & Chem-

icals Corporation v. United States, 41 Cust.Ct. 168, C.D. 2036, 168 F.Supp. 220 (1958), and Clayton Chemical & Packaging Co. v. United States, 38 Cust. Ct. 617, Reap.Dec. 8774, 150 F.Supp. 628 (1957).

Defendant responds to plaintiff's first argument by stating that the name and address of Mark Jeffrey were typed on the envelope in which the notices substituting the name of Mark Jeffrey for Burns & Towne West, Inc. were mailed to him, and that the *Jennings* and *Astra Trading* cases cited by plaintiff are distinguishable from the facts at bar. Defendant also contends that its evidence of delivery of the disputed notices to the postman supplied the requisite proof of "mailing", citing Rosenthal v. Walker, 111 U.S. 185, 4 S.Ct. 382, 28 L.Ed. 395 (1884), and that, in the absence of testimony from the decedent Mark Jeffrey, plaintiff's evidence is insufficient to establish non-receipt of notice of appraisement, citing United States v. Getz Bros. & Co., 55 CCPA 90, C.A.D. 938 (1968).

The court is of the opinion that the *Jennings* and *Astra Trading* cases are distinguishable from the instant case on the facts. The *Jennings* case involved a notice containing dual names and addresses on its face that postal regulations condemned as rendering the notice unacceptable for mailing in a window-type envelope, and also involved a Government concession of inadvertence on the part of customs employees in improperly addressing the envelope containing the notice.

The *Astra Trading* case was decided upon the "irregularities", under the customs regulations, in the preparation and handling of the notice of appraisement prior to reaching the issue of delivery of the notice, which deprived it of the usual presumption of regularity.

On the main point in this case, namely, whether notice of appraisement was given, the court is of the opinion that defendant's proofs are sufficient to establish that the notice was "mailed" to plaintiff Mark Jeffrey. The reasonable inference to be drawn from the evidence of record is that the notices without an address were placed in a franked, return addressed envelope addressed to Mark Jeffrey at his address, and sealed and picked up by the postman at the airport section of the customs.

In Rosenthal v. Walker, *supra*, the Supreme Court of the United States stated the applicable rule in such cases as follows (p. 193, 4 S.Ct. p. 386):

> The rule is well settled that if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time and was received by the person to whom it was addressed. Saunderson v. Judge, 2 H.Bl. 509; Woodcock v. Houldsworth, 16 M. & W. 124; Dunlop v. Higgins, 1 H.L.Cas. 381; Callan v. Gaylord, 3 Watts. 321; Starr v. Torrey, 2 Zabr. 190; Tanner v. Hughes, 53 Pa.St. 289; Howard v. Daly, 61 N.Y. 362; Huntley v. Whittier, 105 Mass. 391. . . .

Thus, properly addressed letters *delivered to a postman* come within the rule effecting delivery by means of the mails.

And the *Orlex Dyes* and *Clayton Chemical* cases do not espouse a different rule since, in neither case, was the person to whom the notices were delivered a United States "postman" as in the instant case. In those cases the deliveree was either an employee of the customs service or was a "messenger."

But the Government's proof of the mailing of the notices in dispute here does not conclude the matter. The ultimate question here is whether notice of appraisement was received by plaintiff Mark Jeffrey. United States v. International Importers, Inc., *supra*. As our appeals court pointed out in the *International Importers* case:

> Congress in providing for a written notice of an increase in appraisement under facts such as those here present, clearly intended that *express* notice be given to the importer. . . . [55 CCPA at 47. Emphasis quoted.]

Hence, proof of mailing raises a presumption of delivery which may be rebutted by evidence of non-receipt.

In the instant case persons in the employ of plaintiff Mark Jeffrey during the critical period have testified as to the non-receipt of the notices in dispute in the mails, of their failure to find them after engaging in searches of appropriate firm files, and of their employer's expectations of receiving the notices, as well as of his surprise over being informed by customs personnel that notices had been mailed to him.

The employees who testified in the case were in privy with the broker in the company's handling of the files to the extent that one of them was in charge of receiving and distributing all incoming mail, including any notices of appraisement relating to the these files, and both of them were engaged in searches of these files for the missing notices at their employer's request. As such, the broker's employees could give competent evidence of their involvement with the files in question and of their employer's behavior concerning notices of appraisement affecting these files. The broker's conduct itself is evidence indicative of the non-receipt of the disputed notices.

Therefore, under all of the circumstances in this case, the court is inclined to the view that there is sufficient evidence in the case which establishes that the disputed notices were not received by plaintiff Mark Jeffrey, warranting the conclusion that notice of appraisement was not given in this case.

The case of United States v. Getz Bros. & Co., *supra,* does not, in the court's opinion, compel a different conclusion on the facts developed in this record. In the *Getz* case a file clerk in the broker's employ was the sole witness on behalf of the plaintiff who unsuccessfully challenged the giving of notice of appraisement. The file clerk did not receive the incoming mail which went directly to the company president. Also, there was no evidence in that case that the president's quarters were searched for the missing notices, or of his practice in handling notices received by him. And there was in that case the unlikelihood of notices dated on three different dates in a period of 19 days all going astray. Thus, the facts in *Getz* are significantly different from those at bar where the recipient of incoming mail is a witness in the case, searches of company files were made, and the disputed notices appear to have been mailed in one envelope.

For the reasons stated, the claim in the complaint that the appraisement and ensuing liquidation are null and void for want of giving of notice of appraisement is sustained.

Judgment will be entered herein accordingly.