**SLIP OP. 01-79**

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HONORABLE JAMES L. WATSON, SENIOR JUDGE**

| | | |
|---|---|---|
| **FRONTIER INSURANCE COMPANY,** | : | |
| **Plaintiff,** | : | **Consolidated Ct. No. 95-10-01383 and Court No. 01-00461(severed** |
| **v.** | : | **entries)** |
| **UNITED STATES,** | : | |
| **Defendant.** | : | |

[Plaintiff's motion for summary judgment denied; defendant's cross-motion for summary judgment granted in part.]

Dated: June 26, 2001

Law Offices of Elon Pollack, P.C. (Elon A. Pollack and Eugene P. Sands, Esqs.) for plaintiff.

Stuart E. Schiffer, Acting Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Amy M. Rubin, Esq.); Edward N. Maurer, Deputy Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of counsel, for defendant.

## OPINION AND ORDER

**WATSON, SENIOR JUDGE:**

## INTRODUCTION

This consolidated action[1] involves seventy-five entries of wearing apparel from El

Salvador made by Offshore Sewing Industries ("Offshore") at the Port of Miami, Florida

between September 1990 and January 1993. These entries were covered by a continuous bond

issued by plaintiff, Frontier Insurance Company ("Frontier"), on August 9, 1990, as surety. The

---

[1] The parties submitted cross-motions for summary judgment for Court Nos. 95-08-01099, 95-10-01383, and 95-08-01084. The parties, issues and merchandise being the same, the Court has sua sponte consolidated these actions into Consolidated Court No. 95-10-01383.

United States Customs Service ("Customs") claims that it provided Frontier with notices of an extension of the period for liquidation of the entries. Frontier, however, disputes it ever received such notices, and consequently, the entries must be "deemed liquidated" as provided in 19 U.S.C. §1504 at the entered value. Customs actually liquidated the subject entries on or after July 22, 1994 based on higher appraised values and demanded payment of increased duties from both Offshore and its surety, Frontier. Plaintiff filed protests against the foregoing liquidations. Customs denied the protests, plaintiff paid the increased duties, and then filed the summonses in this action. The court has jurisdiction under 28 U.S.C. § 1581(a).

The parties in this action have submitted cross-motions for summary judgment. The central issues on those motions are whether Customs sent extension notices to the surety and whether Frontier actually received such notices. Defendant claims, alternatively, with respect to thirty seven entries,[2] that even if the court finds as a fact that Frontier did not receive the extension notices Customs claims it sent to Frontier prior to December 8, 1993, defendant is nonetheless entitled to partial summary judgment since, as a matter of law, Customs was not required by 19 U.S.C. §1504 to provide Frontier with extension notices prior to December 8, 1993.[3]

---

[2] These entries are: M86-0563822-9, M86-0565289-9, 189-0006398-5, 189-0006417-3, 189-0006419-9, 189-0006441-3, 189-0006442-1, 189-0006471-0, 189-0006512-1, 189-0006523-8, 189-0006536-0, 189-0006571-7, 189-0006575-8, 189-0006610-3, 189-0006611-1, 189-0006624-4, 189-0006628-5, 189-0006645-9, 189-0006682-2, 189-0006683-0, 189-0006684-8, 189-0006698-8, 189-0006805-9, 189-0006816-6, M86-0564838-4, M86-00564847-5, 189-0006312-6, 189-0006319-1, 189-0006327-4, 189-0006336-5, 189-0006342-3, 189-0006354-8, 189-0006355-5, 189-0006364-7, 189-0006368-8, 189-0006372-0, and 189-0006373-8.

[3] 19 U.S.C. §1504, as amended by section 641 of Title VI (Customs Modernization) of the North American Free Trade Agreements Implementation Act ("Mod Act"), Pub. L. 103-182, §641, 107 Stat. 2204, became effective on December 8, 1993. Section 641 amended §1504 by

**THE RECORD**[4]

Between September 1990 and January 1993, Offshore imported wearing apparel

from El Salvador, and made seventy-five separate entries at the port of Miami, Florida. These

entries were made under a continuous bond issued by Frontier, as surety, on August 9, 1990.

This bond secured payment of any duty, tax or charge due to the United States. Frontier renewed

this bond on both August 10, 1991 and August 10, 1992, before it terminated on April 30, 1993.

Customs liquidated all seventy-five entries on or after July 22, 1994 and within the 4 year period

provided in 19 U.S.C. §1504.

Pursuant to 19 U.S.C. §1504, entries must be liquidated within one year, or the entries are

deemed liquidated at the rate of duty and valuation entered by the importer. However, Customs

may issue notices extending the liquidation period each year for a total of four years from the

date the merchandise was entered. In the instant case, it is undisputed that Customs records show

that it issued 173 extension notices addressed to Frontier's duly authorized agent, International

Bond & Marine ("IB&M"), at 60 East 42nd Street, suite 1914. However, IB&M relocated from

suite 1914 to suite 1620 at 60 East 42nd Street prior to the issuance of these notices.

The evidentiary record also contains the following:

1. Customs has submitted both a letter from plaintiff to Mr. Ronald Busch, Operating

Accountant of Customs' Debt Collection Unit at the National Finance Center requesting

Customs to mail the monthly printout of increased duty claims to IB&M, as agent for Frontier, at

_____

requiring Customs to provide sureties with notices of an extension of liquidation.

[4] The record on the motions before the court is comprised of various declarations, deposition excerpts, and official entry documents.

60 East 42nd Street, and a printout from Customs' surety file reflecting a change of Frontier's address from 196 Broadway, Monticello, N.Y. to IB&M at 60 East 42nd Street, suite 1914, New York, N.Y. The foregoing letter and printout are attached to a declaration executed by Ms. Sue Yeager, a Customs official identified below.

2. As noted above, IB&M moved its office from suite 1914 to suite 1620 at 60 East 42nd Street in November 1989. According to a deposition and declaration of Ms. Lynn Hirrel, an employee of IB&M, she communicated with Mr. Busch twice to notify Customs that IB&M and Frontier had relocated to suite 1620. However, according to Mr. Busch's declaration, he has no recollection of any communication or discussion with Hirrel about changing the mailing address for IB&M from suite 1914 to suite 1620.

3. From a declaration executed by Ms. Yeager, a Lead Accounting Technician of the Billings Team of the Accounts Receivable Branch of Customs Accounting Services Division ("Billings Team"), it appears that Customs maintains in its computer system, the Automated Commercial System ("ACS"), records of the mailing address for each surety authorized to issue customs bonds. Continuing, Yeager states that to ensure accuracy, the authority to change a surety's mailing address is vested in only a small subgroup of the Billings Team; that the Billings Team retains a paper copy of any correspondence or notes in a surety action file; that the ACS and the surety action file reflect a letter request for a change of address by plaintiff to change Frontier's address from its Monticello location to IB&M's location at 60 East 42nd Street, suite 1914 and that there was a prompt change of address in the ACS.

4. Plaintiff has submitted a declaration of its legal counsel in this case, Elon Pollack, Esq., which in turn has attached two other declarations of Customs officials, Arthur Versich and

Roger Odom. According to the declarations of these Customs officials, Customs does not retain

a hard copy of individual extension notices per se, but written extension notices are mailed

within a day of their printing each week; and Customs retains a printout of its computer records

which list when and to what address notices of extension are sent. Customs' computer printout

covering the entries at issue, which is attached to an additional declaration of Mr. Versich

submitted by defendant, shows that from 1991 to 1994, the extension notices were mailed to

suite 1914.

5. In her deposition, Hirrel testified that between 1991 and 1994, each day when the mail

arrived, she would sort the mail into piles, open the checks and give them to the person

responsible for posting them, and segregate the suspension/extension notices into ports and file

them in the boxes for each port. Moreover, Hirrel stated that when she searched the boxes for the

notices at issue, she only found three: those for entries M86-0564408-6, M86-0564833-5, and

M86-056529-9. She also stated in her deposition, that even after the move to suite 1620, she

received mail addressed to suite 1914; sometimes an employee of the new occupant of suite

1914, a client of IB&M, would bring mail addressed to IB&M at suite 1914, if that person had

received any, to suite 1620.

6. Yeager's declaration and attachment indicate that Customs' surety file contains a note

written by an unidentified person to an unidentified person concerning change of address,

ostensibly of Frontier, to conform with the latter's address listed in the Federal Register, and a

computer printout showing a change of address for plaintiff on April 24, 1991 from 60 East 42nd

Street, suite 1914 to its Monticello location. The surety file also contains a note, dated May 23,

1991, reflecting a conversation between Yeager and Mr. Ruhuler from Frontier's Monticello

Office requesting that plaintiff's address be changed from Monticello back to 60 East 42 Street. Yeager also states that she recalls reviewing IB&M's address at 60 East 42nd Street with Ruhuler and confirming the suite number as 1914.

7. In 1992 and 1993, IB&M and Customs exchanged letters, submitted by plaintiff, concerning billing and payment issues. IB&M's letterhead on these letters indicates an address of 60 East 42nd Street, suite 1620 and Customs addressed its reply letters to IB&M at suite 1620.

8. In his declaration, Busch states that he does not recall being notified of anything between July 22, 1989 and August 24, 1994 regarding an address change for Frontier or IB&M. Busch also stated that he corresponded with Frontier through IB&M at the latter's address at suite 1620; and that he had no reason to compare the address he was using for the letter (suite 1620) and the address stored in the ACS. Busch further stated that while he was a contact point for change-of-address inquiries by Frontier, he did not have responsibility for maintaining the surety address records or authority to change the records. Further, Busch stated that in the absence of Frontier or IB&M actually making a change of address request, he had no reason to question whether the suite number he addressed his letters to was different from the ACS record, or to question whether suite 1620 represented a change of address or simply an additional office on another floor in the same building. Additionally, Yeager stated in her declaration that plaintiff's letters to Customs concerning billing reflecting an address of 60 East 42nd Street, suite 1620, do not request a change of address; that the letters Customs wrote back were not generated from ACS; and that for all Customs knew, IB&M might have had offices on two floors at 60 East 42nd Street.

9. The surety file, attached to Yeager's declaration, contains a letter dated August 26,

1994 from Mr. Tattum, President of IB&M, instructing Customs to change IB&M's address to Hoboken, N.J.

10.  A declaration executed by Tattum states that a change of address was filed with the Post Office in or about November 1989, to reflect the move from suite 1914 to suite 1620. However, Eileen Downing, a Supervisory Entry Specialist with Customs in the Entry Branch in Miami, states in a declaration that Customs Form 4333A (Notice) contains a return address for the port the merchandise was entered.  For notices relating to Miami, the return address is a post office box which routes the mail to the Miami Entry Branch.  Downing also states that she does not recall ever seeing a notice to a surety company among the returned mail.  Additionally, she states that she was not aware of any notices addressed to suite 1914 that had been returned to the Entry Branch, and that the Entry Branch corrects errors to returned notices to ensure that future notices are properly addressed and re-addresses and re-mails the returned notices so they can reach the intended recipient.

## PLAINTIFF'S CONTENTIONS

Plaintiff first contends that under both 19 U.S.C. §1504 and 19 C.F.R. §159.12, at all relevant times in this case, Customs was required to provide a surety with notice of an extension or suspension of liquidation.  In support, plaintiff suggests that this court's interpretation of 19 U.S.C. §1504 in Old Republic Ins. Co. v. United States, 10 CIT 589 (1986) ("Old Republic"), has been rejected by the Court of Appeals for the Federal Circuit.  Second, plaintiff argues that the Government may not avail itself of the presumptions of regularity and delivery of the notices, which inter alia, subsume that the notices were correctly addressed if sent through the mail. Thus, plaintiff argues that there is no dispute it changed its suite within its office building,

Customs was notified of the change of address (suite number), and Customs nonetheless persisted in sending the notices to its former incorrect suite number. Consequently, plaintiff insists that the Government is entitled to neither the presumption of regularity nor of delivery. Plaintiff further contends that even assuming arguendo that the Government may rely on those presumptions, they are rebutted by plaintiff's undisputed evidence of IB&M's strict routine for receiving and processing mail, and non-receipt of the notices. Plaintiff, therefore, requests that the court grant its motion for summary judgment and hold that its entries must be deemed liquidated at the entered value under 19 U.S.C. §1504.

## DEFENDANT'S CONTENTIONS

Defendant contends that prior to the effective date of the Mod Act, December 8, 1993, Customs was not required by 19 U.S.C. §1504 to provide notice of an extension to sureties. Moreover, the Government relies on this court's holding in Old Republic that prior to the Mod Act, Customs was not required to provide notices of an extension to a surety notwithstanding its regulations provided for such notice. Furthermore, the Government insists there is no dispute that plaintiff never requested a change of address for notices, that Customs mailed the 173 notices to the mailing address plaintiff requested, that the tenant in suite 1914 occasionally brought mail addressed to plaintiff to its new suite, 1620, and that no notices were ever returned to Customs by the Post Office. The Government requests summary judgment dismissing this action, or in the alternative, partial summary judgment for the thirty-seven entries for the reasons stated previously.

**DISCUSSION**

**Standard of review**

Under USCIT Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When a party moves for summary judgment, it bears the burden of demonstrating the absence of any genuine issues of material fact. Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,, 853 F.2d 1557, 1560 (Fed. Cir. 1988). However, it remains a function of the court to "determine whether there are factual issues that are material to resolution of the action. The court may not resolve or try factual issues on a motion for summary judgment." Sea-Land Service, Inc. v. United States, 69 F. Supp. 2d 1371, 1375 (CIT 1999) (quoting Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050).

The parties have submitted cross-motions for summary judgment presenting the court with two questions. First, whether prior to the effective date of the Mod Act, December 8, 1993, 19 U.S.C. §1504 and 19 C.F.R. § 159.12 required Customs to give notice to a surety of an extension of liquidation. This question, of course, is purely a matter of law, and thus appropriate for the Court to resolve on the cross-motions for summary judgment. The second question is whether, to the extent if any, that Customs was required to give notice of extension to the surety such notice of extension in fact was given in this case.

**19 U.S.C. §1504**

At the outset, the court notes that there is no dispute in this case that following the effective date of the Mod Act, December 8, 1993, Customs was required to give notice of an extension of liquidation to both the importer and the surety pursuant to 19 U.S.C. § 1504(b). Plaintiff contends, however, that even prior to December 8, 1993, 19 U.S.C. §1504 and 19 C.F.R. §159.12 required Customs to provide both importers and sureties with notices of an extension of liquidation, and that in this case Customs failed to provide such notices to Frontier. In support of that argument, plaintiff asserts that this court's interpretation of §1504 in Old Republic was incorrect, citing two recent decisions of the Court of Appeals for the Federal Circuit, addressed infra. Thus, plaintiff claims that this court should grant its motion for summary judgment for all seventy-five entries because Customs did not give it notice of an extension of liquidation as required by law, and therefore, those entries were deemed liquidated as entered.

The Government, citing Old Republic, contends that prior to the Mod Act amendments, 19 U.S.C. §1504 required Customs to provide notice of an extension to importers, but not to sureties, and that the decisions of the Federal Circuit relied on by plaintiff did not disturb the holding in Old Republic, which remains controlling law. Thus, the Government argues that based on Old Republic, this court as a matter of law should at least grant partial summary judgment on thirty-seven entries liquidated within the one-year extension of liquidation issued prior to the Mod Act amendments to §1504, irrespective of whether plaintiff received notices of extension (since such notices were not required pre-Mod Act).[5]

---

[5]By contrast, the other thirty-eight entries before the court were liquidated within one-year extensions issued on or after the effective date of the Mod Act amendments. Thus, with respect to those entries, there is no dispute that the statute required that notice be given to a surety, and

Prior to the Mod Act, §1504 provided, in pertinent parts:

(a) Liquidation. Except as provided in subsection (b), an entry of merchandise not liquidated within one year from:
(1) the date of entry of such merchandise. . .
shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer of record. . . .
**(b) Extension.  The Secretary may extend the period in which to liquidate an entry by giving notice of such extension to the importer of record in such form and manner as the Secretary shall prescribe in regulations, if - -**
(1) information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officer;
(2) liquidation is suspended as required by statute or court order; or
(3) the importer of record requests such extension and shows good cause therefor.
**(c) Notice of Suspension.  If the liquidation of an entry is suspended, the Secretary shall, by regulation, require that notice of such suspension be provided to the importer of record concerned and to any authorized agent and surety of such importer of record. . . .**

19 U.S.C. §1504 (emphasis added).

When Customs promulgated its pre-Mod Act regulations under §1504, it provided that

the district director "promptly shall **notify** the importer or the consignee and his agent and **surety**

on Customs Form 4333-A, appropriately modified, that the **time has been extended** and the

reasons for doing so." 19 C.F.R. §159.12 (1990) (emphasis added.).  Thus, prior to the Mod Act

amendment, the regulation contained an additional requirement not provided for by statute, that

is, providing a surety with notice of an extension of liquidation.

The court, in Old Republic, was confronted with a situation where Customs did not

provide the surety, Old Republic, with notices of an extension of liquidation pursuant to 19

C.F.R. §159.12.  Plaintiff, in that case, contended that because Customs did not provide notice

_____

the only issue in this case is factual - - whether such notices were given.

pursuant to its regulations, its entries should be deemed liquidated under §1504.  Old Republic,

10 CIT at 589.  The Government, on the other hand, contended that in enacting §1504 in 1978,

Congress intended sureties to be excluded from the notice requirement for extensions.  Id. at 594-

95.  The court, after evaluating the legislative history, statutory construction of §1504 (b) and (c),

and a subsequent Congressional amendment, held that Congress intentionally omitted sureties

from those who were entitled to notices of extension.  Id. at 595-96.  Thus, the court concluded

that "in order to be consistent with the statute, the customs regulation cannot be read to effect a

deemed liquidation in this case."  Id.

　　　As mentioned supra, plaintiff contends that the above rationale in Old Republic was

rejected by the Federal Circuit in two cases: St. Paul Fire & Marine Ins. v. United States, 6 F.3d

763 (Fed. Cir. 1993) ("St. Paul") and Intercargo Ins. Co. v. United States, 83 F.3d 391 (Fed. Cir.

1996) ("Intercargo").  For its proposition that Congress intended Customs to provide sureties

with notices of an extension, plaintiff cites the Court of Appeals statement in St. Paul:

> [B]efore 1978, "Customs could delay liquidation as long as it pleased, with or
> without notice." International Cargo & Surety Ins. Co. v. United States, 15 CIT
> 541, 543, 779 F. Supp. 174, (Ct. Int'l Trade 1991)  Section 1504 consequently
> serves to "increase certainty in the customs process for importers, surety
> companies, and other third parties with a potential liability relating to a customs
> transaction."  S. Rep. 778, 95[th] Cong., 2d Sess. 32 (1978).

St. Paul, 6 F.3d at 767; see also Intercargo, 83 F.3d at 396.

　　　While the Court of Appeals articulated the above as the rationale for §1504, it did not

mention extensions of liquidation (as opposed to suspensions), the inconsistency between 19

U.S.C. §1504 and 19 C.F.R. §159.12, or whether §1504 required Customs to provide a surety

with notices of an extension of liquidation.  Moreover, this court in Old Republic acknowledged

this same rationale for enacting §1504, but determined that

> [w]hile these considerations are consistent with the desire to provide sureties with
> notice of extension of the time for liquidation, Congress failed to require such
> notice to them in section 1504(b), as a prerequisite to extension while explicitly
> requiring a notice to sureties in section 1504(c), if a suspension of liquidation has
> occurred. Since the provisions are part of the same statutory schemes regarding
> the liquidation of entries, the court can only assume Congress was aware of the
> fact that it was omitting sureties from the list of parties to whom notice of
> extension must be given before the extension is effective.

Old Republic, 645 F. Supp. at 596. Nothing in St. Paul or Intercargo indicates this analysis is

incorrect.

Additionally, this court in Hanover Ins. Co. v. United States, No. 94-07-00438, slip op.

01-57 (CIT Dec. May 16, 2001) ("Hanover"), recently relied on Old Republic in determining that

§1504 (c) required Customs to provide a surety with notice of suspension. Hanover, slip. op. at

17. In its analysis of §1504, the court reviewed the statute and relevant legislative history,

acknowledged that Congress provided for different treatment of sureties under §1504 (b) and (c),

and concluded that "subsection (a), (b), and (c) [of §1504], read together are not perfectly

'coherent and consistent', and the intent of Congress cannot be gleaned solely from their

erstwhile words." Id at 14. Thus, the court agreed with Old Republic, that prior to the Mod Act,

§1504 required notice to the surety for suspension of liquidation, but not for notice of extensions

of liquidation. Id. at 16.

Finally, while "the court should not place too high a value on the views of one Congress

as to the construction of a statute enacted by another Congress, . . . the views of a subsequent

Congress may be given some consideration in interpreting relevant Congressional intent." Old

Republic, 10 CIT at 595.  Despite an earlier amendment[6] to §1504, Congress did not harmonize

the notice requirements under §1504 (b) and (c) with respect to sureties until the Mod Act.

Moreover, in considering the Mod Act, Congress recognized:

> With regard to notification of sureties, the bill corrects an omission in existing law
> and codifies existing administrative practice.  Presently, Customs is only required
> to provide notice of an extension of liquidation of an entry to sureties when
> liquidation is suspended by statute of court order.  **The statute does not require
> notice to be sent to the surety when liquidation is extended** because Customs
> requires more information or when the importer requests an extension.  **The bill
> will now require notification of sureties in all three instance.**

H.R. Rep. No. 103-361, pt. 1,  p 139 (1994) (emphasis added); see also Hanover, slip. op. at 16.

Thus, it is readily apparent that prior to the Mod Act amendment, Congress did not require

Customs to provide sureties with notices of an extension of liquidation.  Therefore, the court

agrees with the Government that Old Republic is controlling law.

For all the foregoing reasons, the court grants the Government's alternative motion for

partial summary judgment on the thirty-seven entries liquidated within the one-year extensions of

liquidation issued prior to the Mod Act amendments to §1504, whether or not plaintiff received

notices of extension.  Further, this court severs these entries from Consolidated Court No. 95-10-

01383, designates them to be covered by Court No. 01-00461, and dismisses that action.

### Receipt of Notices of an Extension of Liquidation

Plaintiff contends that it is entitled to summary judgment based on the issue of whether

notices of extension of liquidation were given by Customs.  According to plaintiff, notices were

---

[6] Section 191 of Subtitle D, Technical Amendments, Trade and Tariff Act of 1984, Pub.
L. 98-573, 98 Stat. 2971, October 30, 1984 amended 19 U.S.C. §1504 by replacing "the
importer, his consignee, or agent" to read "importer of record."

improperly addressed and not received by plaintiff. Moreover, plaintiff posits that Customs is not entitled to the presumptions of regularity and delivery because it mailed the notices of an extension to the incorrect address.

The Government contends that it is entitled to summary judgment as to the issue of notice. Hence, the Government insists that since Customs mailed the notices to the address specified by plaintiff, it is entitled to the presumptions of regularity and delivery. Moreover, the Government claims that, in any event, plaintiff actually received the notices because none of the notices were ever returned by the Post Office to Customs' Entry Branch at the Port of Miami.

Based solely on the contentions of the parties, it would appear that there may be genuine issues of material fact respecting the issue of giving and receiving extension notices. Fundamentally, of course, bald assertions of fact by the parties in their briefs without adducing any evidence are insufficient to create genuine issues of material fact. See T&M Distributors, Inc. v. United States, 185 F.3d 1279, 1285 (Fed. Cir. 1999). However, a careful analysis of the evidence adduced by the parties leads this court to conclude there are genuine issues of material fact concerning the giving and receiving of the extension notices for thirty-eight entries.

Customs officers like other Government officials are entitled to a rebuttable presumption of "regularity," i.e., their duties are performed in the manner required by law. International Cargo & Sur. Ins. Co. v. United States, 15 CIT 541, 544 (1991). Here, the Government relies upon both the presumption of regularity, specifically that notice was given in accordance with statutory and regulatory requirements, and the presumption of delivery. In other words, "a letter properly directed that is placed in the mail or delivered to a postal carrier is presumed to have reached its destination and to have been received by the person to whom it was addressed. . . .

Thus, the onus upon the Government is to establish proper mailing of requisite notices; it then

falls to the plaintiff to establish nonreceipt [sic] ." A.N. Deringer, Inc. v. United States, 20 CIT

978, 993 (1996)(internal citations omitted); see also Hanover, supra.

Here, while the Government does not have direct proof that the notices of an extension

were actually mailed, it has submitted the declaration of Arthur Versich, to establish that while

Customs does not retain a hard copy of the notices, they are regularly mailed within a day of

printing each week and Customs retains a printout indicating when and to what address notices

of extension are mailed. Customs' printout for the entries at issue, unrebutted by any evidence

submitted by plaintiff, demonstrate that between 1991 and 1994, notices were mailed to IB&M at

60 East 42nd Street, suite 1914. Thus, the Government is entitled to the presumptions of

regularity and delivery if Customs mailed the notices to the correct address. However, plaintiff

asserts and has adduced evidence that it contends shows Customs mailed the notices of extension

to the wrong address. As support, plaintiff has proffered both the declaration of Ms. Hirrel, an

employee of IB&M, and excerpts from her deposition stating that she notified Customs in 1989

that IB&M moved to suite 1620. Plaintiff has also submitted letters it exchanged with Customs

regarding billing matters, where Customs addressed the response letters to plaintiff at suite 1620.

In response, the Government has proffered an unrebutted declaration from Ms. Yeager

stating that in 1992, plaintiff's address was inexplicably changed in the ACS to reflect the

plaintiff's Monticello address, that Mr. Ruhuler from Frontier's Monticello Office contacted her

to request the surety's address be changed from Monticello back to 60 East 42nd Street, and that

she reviewed IB&M's address with Mr. Ruhuler, confirming suite number 1914. Ms. Yeager

also stated that plaintiff's letters to Customs regarding billing claims showing an address of 60

East 42nd Street, suite 1620, do not request a change of address, that Customs' response letters were not generated from ACS, and that for all Customs knew, IB&M might have had offices on two floors at 60 East 42nd Street. Furthermore, Mr. Busch maintains that there was no reason for him to compare the address he used to respond to plaintiff's billing claims (suite 1620) and the address stored in the ACS, and that he did not have responsibility for maintaining the surety address records or authority to change the records. In the absence of plaintiff requesting a change of address, Busch claims he had no reason to question whether the suite number he used to address his letters was different from the ACS record, and if so, whether suite 1620 represented a change of address or simply an additional office on another floor. In sum, as to plaintiff's correct mailing address, the parties' evidence as presented above is squarely in conflict, and therefore, there is a factual issue that must first be resolved bearing on whether the Government is entitled to the presumption of regularity and delivery.

Even if the Government is entitled to the presumptions of regularity and delivery, these presumptions are rebuttable by proof of non-receipt. Deringer, 20 CIT at 986. As to the issue of non-receipt, plaintiff again relies on statements from Ms. Hirrel. Ms. Hirrel stated that between 1991 and 1994, each day when the mail arrived, she would sort the mail into piles, segregate the suspension/extension notices into ports, and then file the notices in the boxes for each port. Moreover, Ms. Hirrel stated that when she searched the boxes for the notices at issue, she only found three. Plaintiff has also submitted the declaration of Kevin Tattum, President of IB&M, in which he states that a change of address form was filed with the Post Office in or about November 1989, to reflect the move from suite 1914 to suite 1620, apparently inferring that the Post Office would have forwarded notices to the new address.

Seeking to rebut the foregoing evidence of plaintiff, and thus to prove that plaintiff actually received the notices, the Government points both to Ms. Hirrel's statement that occasionally when mail was sent to suite 1914, an employee of the new occupant, a client of IB&M, would bring the mail to IB&M, and to the declaration of Eileen Downing, a Supervisory Entry Specialist with Customs in the Entry Branch in Miami. Ms. Downing states that Customs Form 4333A (Notice of an Extension) contains a return address for the port at which the merchandise was entered. For notices relating to Miami, the return address is a post office box which routes the mail to the Miami Entry Branch, where they correct the underlying errors to the returned notices so future notices are properly addressed, and then re-address and re-mail the returned notices so they can reach the intended recipient. Downing states that she does not recall ever seeing a notice to a surety company among the returned mail. Additionally, she states that she was not aware of any notices that had been returned to the Entry Branch which were addressed to suite 1914.

It is clear from the court's careful review of the evidence of record that the parties dispute both whether the notices were properly addressed (which goes to the presumptions of regularity and delivery), and whether the notices were nonetheless actually received by plaintiff (which goes to the question of whether the presumptions were rebutted). The short of the matter is the court finds triable issues of material fact respecting thirty-eight entries which this court may not resolve by summary judgment. Accordingly, the court denies the cross-motions for summary judgment with respect to the remaining thirty-eight entries.

## CONCLUSION

This court finds, as a matter of law, that 19 U.S.C. §1504 did not require Customs to provide sureties with notices of an extension of liquidation prior to the Mod Act. Thus, the court grants the Government's alternative motion for partial summary judgment on the thirty-seven entries that were liquidated pursuant to extensions of time effected prior to the Mod Act, and for which entries, the issue of notice to the surety is immaterial. These entries are severed from Consolidated Court No.95-10-01383 and designated to be covered by a new number, Court No. 01-00461. The latter action is hereby dismissed.

As for the remaining thirty-eight entries, where there is no dispute between the parties that extensions of liquidation effected by Customs on and after December 8, 1993 required notices to the surety under 19 U.S.C. § 1504(b), the court finds triable issues of material fact, as discussed above. Therefore, because of the triable issues of fact, the parties cross-motions for summary judgment with respect to the thirty-eight remaining entries are hereby denied.

SO ORDERED.

Dated: New York, New York                            _____
         June 26, 2001                                           James L. Watson, Senior Judge