**Slip Op. 03-53**

UNITED STATES COURT OF INTERNATIONAL TRADE

——————————————————————
                              :

DANIEL ATTEBERRY,
                              :

          *Plaintiff,*
                              :

       v.                           Court No. 02-00647

                              :

UNITED STATES,
                              :

          *Defendant.*
                              :
——————————————————————:

[Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to 28 U.S.C. §2636(a)(1) denied.]

Dated: May 14, 2003

    <u>Vanessa von Struensee</u>, for Plaintiff.

    <u>Robert D. McCallum, Jr.</u>, Assistant Attorney General; <u>John J. Mahon</u>, Acting Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Jack S. Rockafellow</u>); <u>Yelena Slepak</u>, Office of Assistant Chief Counsel, International Trade Litigation, Bureau of Customs and Border Protection, United States Department of Homeland Security, Of Counsel; for Defendant.

**OPINION**

RIDGWAY, Judge:

    The United States ("Government") has moved to dismiss for lack of subject matter jurisdiction this action in which plaintiff Daniel Atteberry ("Importer") contests the decision of the

United States Customs Service ("Customs")[1] re-classifying for tariff purposes certain merchandise which he describes as "bike[s]/kart[s]/scooter[s]." Specifically, the Government's motion contends that this action is untimely under 28 U.S.C. § 2636(a)(1) (2000), because it was assertedly filed more than 180 days after the mailing of Customs' notice of denial of the Importer's protest challenging the agency's re-classification decision.

For the reasons set forth below, the Government's motion to dismiss for lack of subject matter jurisdiction pursuant to § 2636(a)(1) must be denied.

## I. **Background**

In late May 2001, a shipment of "bike[s]/kart[s]/scooter[s]" was entered duty-free through the port of Seattle by plaintiff Importer, Daniel Atteberry (d/b/a Pedal Pedal GoKarts). Later, Customs re-classified the merchandise, resulting in the imposition of duties on certain items. Customs notified the Importer of the agency's determination in late September 2001; and, in mid-October, Customs liquidated the entry and billed the Importer for the unpaid duties.[2]

In response to Customs' determination, the Importer submitted an "Application for further review [re Entry] 603 10483064" dated December 20, 2001, seeking reconsideration of the agency's

---

[1]Effective March 1, 2003, the Customs Service was renamed the Bureau of Customs and Border Protection of the United States Department of Homeland Security. *See Reorganization Plan Modification for the Department of Homeland Security*, H.R. Doc. 108-32, at 4 (2003).

[2]Although the Government asserts that the bill was mailed to the Importer's address of record, there is no indication in the record here whether he ever actually received it.

decision. Customs treated that submission as a protest, and denied it on April 3, 2002 (according to the date on the face of the notice of denial). The agency then mailed a copy of the notice to the Importer.

At issue here is the "date of mailing" of the notice. The Government's motion is premised on its assertion that Customs personnel mailed the notice of denial to the Importer the same day the protest was denied. *See* Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's Action for Lack of Subject Matter Jurisdiction ("Def.'s Brief") at 6. In contrast, the Importer has consistently maintained that the notice was mailed six days later – on April 9, 2002. *See* Summons (with Importer's handwritten note "Mailed 4/9/02" in box captioned "Date Protest Denied"); Memorandum in Support of Plaintiff's Motion for Judgment and in Opposition to Defendant's Motion to Dismiss ("Pl.'s Brief") at 6.

This action was commenced with the Court's receipt of the Importer's Summons and Complaint[3] on Monday, October 7, 2002 – 187 days after April 3, 2002, and the first business day following Sunday, October 6, 2002 (which was the 180th day after April 9, 2002).

## II. Analysis

It is axiomatic that " '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and [that] the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " United States v. Mitchell, 445 U.S. 535, 538 (1980) (*quoting* United States v. Sherwood, 312 U.S. 584, 586 (1941) ). Pointing to 28 U.S.C. § 2636(a)(1), the

---

[3]The Importer's letter dated October 3, 2002, attached to the Summons, has been deemed the Complaint. At the time this action was filed, the Importer was acting *pro se*.

Government asserts in its opening brief that this action therefore must be dismissed because "Congress only gave this Court jurisdiction over civil actions filed within 180 days" of Customs' denial of a protest. Def.'s Brief at 5.

The referenced section of the statute reads:

**§ 2636.  Time for commencement of action.**

(a)      A civil action contesting the denial, in whole or in part, of a protest under section 515 of the Tariff Act of 1930 [19 U.S.C. § 1515] is barred unless commenced in accordance with the rules of the Court of International Trade –

          (1)      within one hundred and eighty days after the *date of mailing* of notice of denial of a protest under section 515(a) of such Act; . . .

28 U.S.C. § 2636(a)(1) (2000) (emphasis added).

As noted above, the Government's claim of untimeliness is premised on its assertion that Customs mailed the notice of denial of protest on April 3, 2002 (the same day the protest was denied). In support of that assertion, the Government invokes the presumption of regularity, and cites a Customs regulation concerning notice. *See generally* Def.'s Brief at 6.

The presumption of regularity holds, in essence, that "public officers perform their duties correctly, fairly, in good faith, and in accordance with the law and governing regulations." Alaska Airlines, Inc. v. Johnson, 8 F.3d 791, 795 (Fed. Cir. 1993) (*quoting* Parsons v. United States, 670 F.2d 164, 166 (Ct. Cl. 1982) ). *See also* Takashima U.S.A., Inc. v. United States, 19 CIT 673, 677-78, 886 F. Supp. 858, 861 (1995) (same). *See generally* Def.'s Brief at 6. The regulation on which the Government relies – 19 C.F.R. §174.30 – provides that, for purposes of calculating the 180-day

period for filing of a civil action challenging the denial of a protest, "the date appearing on [the notice of denial of the protest] shall be deemed the date on which such notice was mailed." 19 C.F.R. § 174.30(a) (2000). In light of those authorities, the Government argues, it "must be presumed, in the absence of evidence to the contrary, that Customs mailed [the] notice of the denial of [the Importer's] protest on April 3, 2002, the date on which the protest was denied." Def.'s Brief at 6.

To buttress the presumption of regularity (and thus its claim of untimeliness), the Government has also submitted the sworn declaration of the Supervisory Customs Entry Officer for the Port of Seattle, who has attested in no uncertain terms to the clockwork precision with which Customs there handles the mailing of notices of denials of protests:

> *The procedure used by our office . . . has been to mail the denial on the same day* that is shown in the Customs Automated Commercial System ("ACS") record as the date of denial, and *which is stamped or handwritten on the notice of denial of the protest itself.* Specifically, once the denial is recorded in ACS, an entry specialist places the notice of the denial of a protest into an envelope, and brings it to the mail room. All the outgoing mail is delivered by the mailroom personnel to the U.S. Postal Service postal drop boxed located in the lower lobby of our building. Pick up from the postal drop boxes is daily.

Attachment F ("Customs Declaration") to Declaration of Jack S. Rockafellow With Attachments, ¶ 5 (emphases added).

Whatever the procedure of Customs personnel in Seattle, the notice of denial of the protest in this case was not postmarked until April 9, 2002 – a full six days after the date on the face of the notice itself and the date on which the denial was entered into Customs' ACS system. *See* Pl.'s

Brief, Exh. 1 (copy of envelope from Customs in Seattle addressed to Importer, postmarked "Seattle

WA APR09'02). And, as discussed above, this action was commenced on Monday, October 7, 2002

– the first business day following Sunday, October 6, 2002, which was the 180th day after April 9,

2002.

However improbable, it is at least conceivable that the delay in postmarking the notice at

issue is attributable not to Customs, but to the United States Postal Service.[4] In other words, it is at

---

[4]Whether the delay is attributable to the Customs Service or to the Postal Service, it is – in any event – attributable to an entity of the federal government. Significantly, however, neither party has intimated that fault here lies with the Postal Service, the overall efficiency and reliability of which have been recognized in case after case over the years.

"Founded in the early days of our national life [, the Postal Service] has had . . . two centuries of successful operation . . . . [and] has justly earned the confidence of the people of the United States." Charlson Realty Co. v. United States, 384 F.2d 434, 447-48 (Ct. Cl. 1967) (Jones, J., concurring). It is the historic efficiency and reliability of the Postal Service that are the foundation of the "presumption of delivery (arrival) and receipt of mail in due course" which is often invoked, in tandem with the presumption of regularity, in notice cases such as this. See, e.g., Frontier Ins. Co. v. United States, 25 CIT ___, 155 F. Supp. 2d 779, 788-89 (2001). In short, the presumption of regularity goes to proof of mailing; and proof of mailing, in turn, "raises a presumption of delivery." See A.N. Deringer, Inc. v. United States, 20 CIT 978, 986 (1996) (citation omitted); Miller v. United States, 364 F. Supp. 1390, 1394 (Cust. Ct. 1973).

Thus, more than a century ago, it was already a "well settled" rule that "if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." Rosenthal v. Walker, 111 U.S. 185, 193 (1884), quoted in Miller, 364 F. Supp. at 1393. That presumption is, in a sense, a presumption of regularity as to the operations of the U.S. Postal Service. See, e.g., Charlson Realty Co., 384 F.2d at 442 (explaining that justification for presumption of arrival of mail in due course is that "[p]ostal employees are presumed to discharge their duties in a proper manner" (citations omitted) ); United States v. Int'l Imps., Inc., 55 CCPA 43, 49 (1968) (quoting Huntley v. Whittier, 105 Mass. 391, 392 (1870), for proposition that presumption of arrival of mail in due course is "founded on the probability that the officers of the government will do their duty and [sic; in] the usual course of business").

least possible (albeit unlikely) that Customs did in fact deposit the notice in the drop box in the lobby of Customs' building in Seattle in a timely fashion on April 3, 2002, but that the Postal Service either failed to make its regular pickups for a matter of several days in a row or it picked up the mail as scheduled but failed to promptly process it.

In this respect, one aside by the Government merits special attention. In a footnote in its opening brief, the Government observes that – by the terms of the statute itself – the 180-day clock established in 28 U.S.C. § 2636(a)(1) begins running on the "date of mailing" of the notice. Implying that Congress deliberately chose the language "date of mailing" over the language "date of postmark," the Government posits that there is no reason "that the 'date of mailing' of the notice of denial for purposes of 28 U.S.C. § 2636(a)(1) must be deemed to be the date when the notice is postmarked by the Post Office." *See* Def.'s Brief at 7 n.4.

The Government's argument, in short, is that "an item quite reasonably might be placed in a box intended solely for U.S. Mail on a date *earlier* than the date of postmark, in which case the earlier date should be deemed the 'date of mailing.' " *Id.* In essence, then, under the Government's hypothetical construction of § 2636(a)(1), Customs personnel in Seattle could hold the day's worth of notices of denials of protests until moments after the Postal Service mail carrier's final pickup from Customs' lobby drop box on a Friday before a Monday holiday; then, as soon as the mail carrier departed, Customs could deposit the notices in the drop box; and, according to the Government's theory, the notices would be deemed "mailed" and the 180-day period triggered as of Friday, even though the notices would not be postmarked (and would not enter the Postal Service's delivery

system) for at least four more days.[5]

To its credit, the Government is not pressing that argument here.[6] It is, in any event, an

_____

[5]If one is inclined to float strained arguments on the triggering of the 180-day clock, there is no reason to stop with the statute. As noted above, the Government here has invoked a Customs regulation which provides that, for purposes of calculating the 180-day period, "the date appearing on [the notice of denial of a protest] shall be deemed the date on which such notice was mailed." Def.'s Brief at 6 (*quoting* 19 C.F.R. § 174.30) (emphasis omitted). Reading that regulation in conjunction with 28 U.S.C. § 2636(a)(1) and extending to the regulation the same sort of reasoning that the Government applied to the statute, the Government might argue that, regardless of when – *or even whether* – the notice denying an importer's protest is deposited in a postal drop box or postmarked by the Postal Service, the importer's time for filing a civil action challenging the denial expires 180 days from the date which Customs places on the face of the notice.

In other words, by that reasoning, Customs could keep all notices of denials in a drawer and mail them to the respective importers on Day 181 (or not at all), and then move to dismiss as untimely any civil actions brought challenging those denials. To state such an absurd proposition is to reject it. *Cf*. Knickerbocker Liquors Corp. v. United States, 432 F. Supp. 1347, 1351 (Cust. Ct. 1977) (where court was "unwilling to presume that customs officials would intentionally be guilty of such bad faith and conduct as would be present where notification of a denial of a protest is withheld specifically to prevent judicial review").

Indeed, although it may be "*the date of mailing* of notice of denial of a protest" (emphasis added) which triggers the 180-day period of 28 U.S.C. § 2636, the notice required by the statute is perfected only upon receipt. *See* F.W. Myers & Co. v. United States, 6 CIT 215, 216, 574 F. Supp. 1064, 1065 (1983) (noting that "[i]mplicit in the term 'notice,' as contained in [28 U.S.C. § 2636(a)], is the requirement that the protestant shall *be made aware* of the denial of the protest") (emphasis added); *see also* United States v. Int'l Imps., 55 CCPA at 53 (discussing general rule that notice is perfected upon receipt; in context of statutory requirement that "notice" of increased appraisement be "given" to importer, "proof of mailing is not *ipso facto* proof of notice given to the importer . . . where . . . the unrefuted testimony is that no notice was received"). In this sense, then, withholding notification of a denial of protest could not prevent judicial review.

[6]*See* Defendant's Memorandum in Response to "Plaintiff's Motion for Summary Judgment and for Denial of Defendant's Motion to Dismiss" ("Def.'s Reply Brief") at 1, n.2, 3.

The Government implicitly concedes that the postmark date controls for purposes of calculating the 180-day period for filing of a civil action challenging the denial of a protest; and it apparently does not challenge the authenticity of the postmark here. *Id.* at 1.

extraordinary proposition, and one not borne out by the statute's legislative history. Simply stated, there is nothing in the record of the lawmakers' deliberations to suggest that Congress intended to impose a stringent 180-day clock on the filing of civil actions challenging denials of protests, and – at the same time – to allow Customs to shave precious days off that clock by "gaming the system."

One final note about the presumption of regularity and the sworn statements proffered in this action concerning Customs' practices in the mailing of notices of denial of protests. To be sure, the sheer volume of protests to be processed is daunting. It therefore would be difficult to criticize the overburdened agency if it were to confess that, while it strives to mail notices on the day that they issue, mailing is sometimes delayed. But it would be unseemly for the Government to invoke a *presumption* of regularity if in fact there is no regularity; and, depending on the circumstances, it might well constitute perjury for a federal official to attest that an agency adheres strictly to certain standard procedures if in fact it does not.[7]

Although it is not possible here to entirely rule out fault on the part of the U.S. Postal Service, it seems much more likely that the notice at issue languished in the custody of Customs.[8] And there

---

[7]Such action on the part of the Government would be particularly egregious where, as here, its effect would be to non-suit a plaintiff. Reflecting on the grave consequences of the Government's undertakings in this area, the court in Orlex Dyes & Chemicals Corp. v. United States, 168 F. Supp. 220, 223 (Cust. Ct. 1958), emphasized: "[I]t must be remembered that important rights are often made to depend in some manner upon notification by mail." There, as here, "the right of appeal . . . [was] influenced by the date of mailing, since the statutory time for appeal . . . [was] reckoned from that date." *Id*. *See also* Plywood & Door S. Corp. v. United States, 57 Cust. Ct. 309, 315 (1966) ("Bear in mind the fact that the giving of notice . . . sets into motion a statute of limitations which affects and controls important rights of the importing public.").

[8]*See* n.4, *supra*.

is nothing to suggest that the handling of this notice was anything out of the ordinary;[9] thus, there can be no assurance that other notices in other cases (perhaps even notices issued by other ports) have not suffered similar mailing delays.[10]

---

[9]Indeed, the Seattle Customs official has affirmatively represented that there was nothing whatsoever unusual about the mailing of the notice of denial in this case. Customs Declaration ¶ 10.

[10]While it might be tempting to dismiss this particular instance of delayed mailing as an isolated incident, there is nothing in the record to support such a conclusion. The Government's reply offers no explanation for the discrepancy between the fact of the postmark in this case and the sworn statements in the Customs Declaration filed in support of the Government's motion. *See generally* Def.'s Reply Brief.

Moreover, it would be wrong to assume that such mailing delays are rare simply because there are no similar reported cases. As the Government notes (*see* Defendant's Statement of Undisputed Material Facts ¶¶ 15-17; Def.'s Reply Brief at 1 n.2), it requested that the Importer in this case provide proof of the date of mailing, and filed its motion to dismiss only after the Importer failed to respond. Presumably, if the Importer had supplied the Government with a copy of the postmark promptly upon request, the instant motion would never have been filed. Thus, there may be other similar cases – perhaps even many other cases – where there was a similar discrepancy between the actual postmark date and the date on which Customs initially asserted that notice was mailed. But any such cases would not have made it into the annals of the law if (as it sought to do here) the Government successfully ferreted out and resolved the "date of mailing" discrepancies early in litigation, so that they never became the subject of unsuccessful motions to dismiss.

Further, this is a rare notice case, because the issue here is the *date* of mailing. In the typical notice case, the issue is not *when*, but *whether* notice was mailed. *See*, *e.g.*, F.W. Myers & Co., 6 CIT 215, 574 F. Supp. 1064.

In the typical case, the importer is in the position of (quite literally) trying to prove a *negative* (i.e., his non-receipt of notice); and the result in such cases generally turns on how airtight a case the importer can make that his procedures for the handling of mail are so foolproof that the "missing" notice could not possibly have been duly delivered and thereafter misplaced. *Compare*, *e.g.*, A.N. Deringer, Inc., 20 CIT 978 (where court found that procedures of plaintiff broker/importer of record for handling of incoming notices were not "as foolproof" as plaintiff's testimony depicted) *with* United States v. Int'l Imps., 55 CCPA 43 (where, considering importer's testimony on its procedures for handling of incoming notices and government's testimony as to agency's "regular mailing procedures," court found in favor of importer based on "strong evidence of irregularities" in government's procedures).

If the Importer here had not retained the envelope in which Customs mailed the notice of denial, his lawsuit would have met a swift end.[11]  But, in some respects, the Government's stakes are even higher.  Particularly for an inveterate litigant such as the Government, the credibility of its witnesses is the coin of the realm.[12]  Moreover, the Government can expect to continue to enjoy the presumption of regularity in the future only if experience shows that it is warranted.[13]  Cases like this one call that into doubt.

---

This case is thus unusual, in that here – due to the nature of the case – there is direct, *affirmative* evidence controverting the Government's claim as to mailing.  At a minimum, that evidence effectively rebuts any presumption of regularity in this case.  But, arguably, it does much more.  Arguably, it also tends to corroborate (at least to some degree) other importers' claims of *non-receipt*; for, if – notwithstanding Customs' sworn testimony of ironclad adherence to stringent procedures – at least some notices are mailed late, then perhaps some notices are never mailed at all.  This case thus casts a shadow over Customs' claim to the presumption of regularity, at least in the context of the mailing of notice.

[11]This action may yet meet an early demise.  Asserting that the Importer failed to pay the outstanding duties before commencing this suit, the Government has also moved to dismiss the case for lack of subject matter jurisdiction under 28 U.S.C. § 2637(a) (2000).  That motion remains pending, as does the Importer's cross-motion for summary judgment.

[12]In A.N. Deringer, Inc., 20 CIT at 985, the court counseled that an importer's "claim of nonreceipt . . . must be scrutinized carefully . . . , given the incentive that a plaintiff may have to claim that no notice was received."  But, as this case suggests, there is another side to that coin: Customs' own incentive to claim that notice was timely mailed.

[13]Another notice case sagely cautions against treating as a "presumption" something which has no basis in actual fact – what is, in truth, a "legal fiction": "Presumptions or fictions serve well enough for a while, but we must avoid mistaking them for reality."  Charlson Realty Co., 384 F.2d at 449 (Nichols, J., concurring).

### III.  **Conclusion**

As the Government apparently now concedes, the notice of denial of protest here at issue was mailed on April 9, 2002.  The 180-day period established in 28 U.S.C. § 2636(a)(1) for the filing of civil actions challenging such Customs actions thus expired on October 6, 2002.  Since that day was a Sunday, and since this action was commenced on October 7, 2002 (the first business day thereafter), the action was timely filed.

Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 2636(a)(1) therefore must be, and hereby is, denied.

_____
Delissa A. Ridgway
Judge

Dated:  May 14, 2003
        New York, New York